33071.   LAWSON *v.* O'KELLEY.

Decided June 7, 1950.   Rehearing denied July 7, 1950.

*Smith & Stephens,* for plaintiff.

*William P. Whelchel,* for defendant.

Sutton, C. J.   This was an action in the City Court of Hall County by N. E. Lawson against Fred W. O'Kelley, to recover $318.25.   The petition contained two counts, the first count alleging an open account for $318.25, and the second count alleg-

ing that the plaintiff had placed a new roof on a building owned by the defendant, at a cost of $318.25, for which the defendant in equity, justice, and good conscience should pay the plaintiff. A verified statement was attached to the petition and reference thereto was made in each count, the items and charges being as follows: 28 squares of roofing, $196; valley tin, putty, etc., $16; labor, $196.25.

The evidence is uncontradicted in most particulars and, in substance, is as follows: During June and July, 1947, Fred W. O'Kelley owned the Bee Hive Market Building in Gainesville, Hall County, Georgia, and sometime during this period, apparently during the latter part of June, on a Sunday, two tenants, Toy Minor and George Convil, went to O'Kelley, complaining about the roof of the building, which was leaking badly and needed replacing, and suggested that N. E. Lawson be authorized to do the work. O'Kelley refused to authorize them to get Lawson to do the work, thinking someone else would do the work cheaper than Lawson, and told them he would see about it the following week. Thereafter Minor and Convil went to Lawson and discussed the matter with him, and finally Convil, without any authority from O'Kelley, told Lawson to go ahead and do the work. Lawson purchased shingles at the Parris Dunlap Hardware Store and proceeded to replace the roof. O'Kelley first learned that Lawson was replacing the roof when he went to the same hardware store to inquire about the price of shingles and was informed by one of the owners, James Dunlap, upon stating the reason for the inquiry, that Lawson had already bought some shingles and was replacing the roof. O'Kelley left the hardware store and went by the building on his way home. He noticed that two men were working on the roof, and that the work on the new roof was practically completed. Lawson was not present. O'Kelley said nothing to the two men, and subsequently refused to pay Lawson for the work. A short time thereafter, in July, 1947, O'Kelley sold the building to Ralph Cleveland. During the negotiations O'Kelley tried to impress Cleveland with the fact that the building had a new roof on it, but Cleveland did not increase his offer, as he wanted the land and intended tearing down the building. During the short time that O'Kelley owned the building after the new roof

was placed on it he did not increase his charges for rent, but after Cleveland acquired the building he changed his mind about tearing it down, and increased the rent and painted the building. Lawson testified that the cost of the labor and material and the reasonable value thereof was $318.25, and Cleveland testified that the value of the building was increased by this amount on account of the new roof. O'Kelley admitted that the value of the building was increased on account of the new roof.

The jury returned a verdict for the plaintiff for $50 and judgment was rendered accordingly. The plaintiff excepted to the overruling of his motion for a new trial. His motion consists of the usual general grounds and elaborations thereon, to the effect that the amount of the verdict was too small and not within the range of the evidence.

■ The plaintiff was not entitled to recover under the first count of his petition, on an open account, under the evidence and the law applicable thereto, because the defendant did not purchase the roofing material nor employ the plaintiff to put the shingles on the building, nor authorize anyone else to do these things for him, nor ratify the purchase of the roofing material and the labor used in putting it on the building, the same having been done without his knowledge. The element of assent or acceptance on the part of the defendant, either express or implied, with respect to placing a new roof on his building, was entirely lacking. See Code, §§ 3-107, 20-107, 20-108.

■ This leads to a consideration of whether a verdict and judgment was authorized for the plaintiff under the second count of the petition, on a quasi-contract under the theory of unjust enrichment. In *Vason* v. *Strauss*, 75 *Ga.* 833, the Supreme Court held: "Where a property owner wrote to another to go to her lot and cut off the hydrant in her yard, and he did not do this, but without other authority, knowledge or consent on her part, laid a hundred feet of conduit pipe, furnished an iron top and repaired water-piping and faucet, he was not entitled to sue and recover of her therefor." In the comment appearing under § 40 in Chapter 2 of the American Law Institute's Restatement of the Law of Restitution the following statement is made: "Restitution for services rendered is not permitted as

freely as for money paid or things given . . Frequently it would be unfair to the person benefited by services to require payment since, although benefited, he reasonably may be unwilling to pay the price; he does not have the opportunity of return, which usually exists in the case of things received, nor the definite and certain pecuniary advantage which ensues where money has been paid." A part of § 41 of this same work is as follows: "A person who has rendered services to another or services which have inured to the other's benefit, is not entitled to compensation therefor if the services were rendered: (a) without the other's knowledge or reason to know of them, solely because of a mistaken belief . . (iii) that the other or a third person had contracted to pay therefor or that a duty by the other would result therefrom, or that by performance he would acquire an interest in the thing benefited by the service." In the comment under § 41 the following appears: "The rule stated in this Section which . . is harsh to a person who performs the service, results from the fact that many times it would be still more harsh to require a recipient to pay for services which he did not want or for which he could not afford to pay although he may have been glad to have them." As an illustration to the portion of § 41 above quoted the following is given: "A mistakenly believes that B, the owner of Blackacre, has employed him to set out trees thereon. A sets out the trees, without B's knowledge, thereby adding to the value of Blackacre. He is not thereby entitled to restitution from B." Also, see 46 Am. Jur., Restitution and Unjust Enrichment, pp. 99 et seq. Lawson furnished labor and material in placing a roof on O'Kelley's building, and the material, having been incorporated into the roof, is in the same category as the labor, that is, neither can be returned, and this distinguishes the case from a situation involving money or chattels not attached to realty. This work was done without the knowledge, authority, or consent of O'Kelley. He first learned about the work when it was practically completed. It appears that the work was done under the mistaken belief that Convil had authority to contract with Lawson on behalf of O'Kelley, or that O'Kelley would be obligated to pay for the work. If a benefit was conferred upon O'Kelley at the expense of Lawson, it was not a benefit for

which O'Kelley became obligated to Lawson under the theory of unjust enrichment. Under the evidence and the law applicable thereto, the plaintiff was not entitled to recover on the second count of the petition.

Since it appears, for the foregoing reasons, that a verdict and judgment for the defendant were demanded, the plaintiff cannot complain and is not entitled to a new trial where there was a verdict and judgment in his favor, irrespective of the amount of said verdict and judgment, and the trial judge did not err in overruling his motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*