A96A1720. ORREL et al. v. AMERADA HESS CORPORATION
et al.
(481 SE2d 624)

SMITH, Judge.

At approximately 2:14 p.m. October 27, 1991 Penny and Marvin Orrel stopped their car at a service station owned and operated by Amerada Hess Corporation (Hess) to purchase gasoline. As Ms. Orrel walked from the passenger side of the car toward the gasoline pump, she allegedly slipped and fell on an oily substance. She and her husband brought this action against Hess alleging that her injuries were caused by Hess's negligence in failing to maintain the premises in a safe condition. The trial court granted summary judgment to Hess on the basis that Hess did not have actual or constructive knowledge of the substance. This appeal ensued. We note that the incident occurred in Florida. Consequently, the substantive issues in this case are governed by Florida law, while the procedural issues are governed by Georgia law. *Fed. Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 765 (417 SE2d 671) (1992).

1. The Orrels contend that fact issues exist as to whether Hess had actual or constructive knowledge of the existence of the oily substance.

In Florida, an owner of land has a duty to invitees to keep the owner's property reasonably safe and to use reasonable care in protecting invitees from dangerous conditions of which the owner is or should be aware. *Winn-Dixie Stores v. Marcotte*, 553 S2d 213 (Fla. App. 1989); *KMart Corp. v. Dwyer*, 656 S2d 1340, 1341 (Fla. App. 1995). To prevail on a premises liability claim, a plaintiff generally must prove that the owner had actual or constructive notice of a defect. *Skipper v. Barnes Supermarket*, 573 S2d 411, 413 (Fla. App. 1991); *Marcotte*, supra. Constructive knowledge may be inferred from either the amount of time the substance was present or by proof that the condition occurred so often that the owner should have known of its existence. *Schaap v. Publix Supermarkets*, 579 S2d 831, 834 (Fla. App. 1991).

The evidence presented in this case showed that Ms. Orrel first saw the substance after she fell. She described it as being clear and approximately 24 inches in diameter. It appeared to her to be "oil with water on top." She acknowledged that she could have seen the

oil had she looked at the pavement and that she was not looking at the pavement before she fell. No employees were in the vicinity of the pump when the Orrels arrived at the gas station. Ms. Orrel acknowledged that the oil was not visible from inside the Hess store because the pad on which the gas pump sat obscured it. She did not know how the substance got onto the pavement or how long it was present before she fell. Although she saw a "slide mark" where her own foot slid in the substance, she could not recall any other marks in the substance.

Mr. Orrel similarly could not specify the length of time the substance was on the pavement. He did state that a Hess employee came outside after Ms. Orrel fell, looked at the substance, and stated, "Hm, boat oil." He added that no vehicles, including boats, were present at the station as he and his wife approached, entered, and parked. In his original deposition, he acknowledged that he had no evidence that Hess employees knew about the presence of the oil before Ms. Orrel fell. In a subsequent deposition, Mr. Orrel stated that the attendant said, "That's boat oil from a boat that was here." In addition to producing evidence of cleaning and inspection procedures with regard to the entire premises, Hess introduced evidence that a Hess employee was in the area around 2:00 p.m. and did not see oil on the pavement.

The Orrels failed to show that Hess had actual knowledge of the oil. Contrary to the Orrels' contention, the statement by a Hess employee, whether it was "Hm, boat oil" or "That's boat oil from a boat that was here," does not show Hess's knowledge of the oil's presence before Ms. Orrel fell. At best, the statement shows that the employee was able to identify the substance as boat oil after Ms. Orrel fell, not that he knew before she fell that an oily substance existed on the pavement or that the boat allegedly present leaked oil.

The record is also devoid of evidence that Hess had constructive knowledge of a defect. No evidence was presented that dangerous conditions existed with such frequency that Hess was charged with knowledge of their presence. In fact, the Orrels testified that they visited that particular service station before and after the incident and found it to be clean. More importantly, the evidence did not show that the condition existed for a length of time that should have resulted in its discovery upon reasonable inspection.

The Orrels argue that fact issues exist concerning the reasonableness of Hess's inspection and cleaning procedures. We need not reach this issue in light of undisputed testimony that an employee was in the area at approximately 2:00 p.m. and the oily substance was not present. At most, the substance was present only 14 minutes before the fall occurred. Additionally, neither Mr. nor Ms. Orrel could testify on deposition as to the length of time the substance was pres-

ent before Ms. Orrel fell, and "the length of time the dangerous condition existed prior to the injury is an indispensable factor in determining liability." *Wal-Mart Stores v. King*, 592 S2d 705, 707 (Fla. App. 1991). Mr. Orrel's own testimony that he saw no vehicle or boat activity for approximately two minutes and forty seconds prior to the fall indicates the existence of the alleged substance for only that amount of time. Even construing this evidence in favor of the Orrels, they have not shown that a reasonable inspection would have revealed the defect. To hold otherwise, despite evidence showing that an employee was in the area less than 15 minutes before the incident occurred, would render Hess an insurer of its property, contrary to the law of Florida. *Marcotte*, supra at 214 (property owner not insurer of safety of invitees).

Other than Ms. Orrel's skid marks, no evidence was presented of smudge marks, streaks, foot prints, or other signs of age indicating that the oily substance "was there for a sufficient period of time for [Hess] to be charged with constructive knowledge of a potentially dangerous condition." *Silver Springs Moose Lodge v. Orman*, 631 S2d 1119, 1121 (Fla. App. 1994); compare *Winn-Dixie Stores v. Guenther*, 395 S2d 244 (Fla. App. 1981) (dirty liquid with scuff and tracks through it imputed constructive knowledge to grocery store). The Orrels' failure to show that Hess had actual or constructive knowledge of the defect precluded recovery, and the trial court did not err in granting summary judgment to Hess.

2. The Orrels contend that summary judgment was prematurely granted and that their due process rights were violated because they did not receive notice of the hearing on Hess's motion for summary judgment. When it filed the motion on April 25, 1995, Hess also requested oral argument. On December 18, 1995, a notice was published in the Fulton County Daily Report that oral argument on the motion was scheduled for January 23, 1996. Counsel for the Orrels, however, was not served with notice of the hearing. Defense counsel appeared for the hearing, but the Orrels' attorney did not. The trial court did not conduct a hearing since the Orrels' lawyer was not present but decided the motion on the briefs and the record. The trial court allowed Hess to submit a supplemental brief, which was filed January 23, 1995, the day the hearing was scheduled.

It is true that publication is not sufficient to provide notice of a motion hearing; such notice must be served. *Goodwin v. Richmond*, 182 Ga. App. 745, 746 (2) (356 SE2d 888) (1987). Failure to provide legal notice of a motion for summary judgment hearing deprives the opponent of the statutory right to file opposing affidavits up to one day before the hearing. Id. at 746. See also *Pyramid Constr. Co. v. Star Mfg. Co.*, 195 Ga. App. 644, 645 (394 SE2d 598) (1990). Had the trial court conducted a hearing in this case, we would be compelled to

reverse on this ground.

Failure to serve notice of the hearing was harmless here, though, because the trial court *did not conduct a hearing*; instead, it decided the motion on briefs. Counsel for the Orrels claims she knew nothing about the hearing until she received defense counsel's supplemental brief, which mentioned her failure to appear. She also claims that because she did not appear for the January 23 hearing, the trial court refused to allow her to respond to the supplemental brief. Counsel mischaracterizes the record. Her statements in her own affidavit that the trial court refused to allow her to respond are inadmissible as hearsay and further are not supported by any evidence, such as a written request to respond, an order denying the request, or a transcript. We note that from the time she received the supplemental brief on January 26, until the trial court's order granting summary judgment was entered on February 29, the Orrels' counsel did not object to the lack of notice or take any other action in that regard. Only after the trial court granted the motion did the Orrels' attorney raise any issue concerning the hearing.

3. The Orrels also contend the trial court erroneously considered two affidavits filed by Hess less than thirty days before the scheduled hearing on January 23. There is no dispute that counsel for the Orrels received copies of two affidavits on January 22, one in the mail and one via facsimile, which were filed on January 19 and January 22, 1996, respectively. Affidavits relied upon in support of a motion for summary judgment must be on file for at least 30 days prior to the hearing. *Corry v. Robinson*, 207 Ga. App. 167, 169-170 (2) (427 SE2d 507) (1993). Had the hearing occurred on January 23, these affidavits would have been untimely, and consideration of them would have been impermissible. But the hearing was cancelled and never occurred, and the trial court's order was entered February 29, more than 30 days after Hess's affidavits were filed on January 22. The Orrels consequently were not denied a "fair opportunity to contradict the supporting material relied upon by [Hess]," *Porter Coatings v. Stein Steel &c. Co.*, 247 Ga. 631, 632 (278 SE2d 377) (1981), and the trial court did not err in considering the affidavits. See generally *McIntosh v. McLendon*, 162 Ga. App. 220 (1) (290 SE2d 157) (1982) (supporting affidavits must be filed 30 days before hearing, or 30 days before summary judgment granted, if no hearing held).

Finally, the record belies any contention by the Orrels' attorney that she was not permitted to respond to the affidavits because she did not appear at the hearing. Counsel *did* respond by brief to the affidavits, arguing that the evidence was conflicting and that summary judgment therefore was improper. Moreover, from the time the last affidavit was filed on January 22 until the trial court entered its order on February 29, counsel had more than 30 days to respond, but

she did not move to strike the affidavits, nor did she attempt to submit additional evidence refuting the affidavits submitted by Hess. The record does not show that she requested a hearing on the motion or a continuance so that she could respond. We find no merit in this argument.

*Judgment affirmed. Andrews, C. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 14, 1997 —

*Brennan, Harris & Rominger, Richard A. Rominger, Julie D. Majer,* for appellants.

*Chambers, Mabry, McClelland & Brooks, Douglas F. Aholt, Beth S. Reeves,* for appellees.