A97A0433. WATSON v. SIERRA CONTRACTING CORPORATION.
(485 SE2d 563)

ELDRIDGE, Judge.

Watson at North Point, Inc. (Watson, Inc.) is a Georgia corporation that owned and operated a retail store at North Point Mall under the registered trade name "Mon Petit Chou," which was not registered until October 7, 1993. Between 1987 and 1994, Mon Petit Chou, Inc. operated a retail store at Phipps Plaza; Susan W. Watson was the president of Mon Petit Chou, Inc., which was incorporated in 1985. In 1987, appellee Sierra Contracting Corporation entered into a contract to build out the retail space for Mon Petit Chou, Inc. at Phipps Plaza; the contract to do the work had been negotiated with appellee on behalf of Mon Petit Chou, Inc. by appellant as corporate president, and payment was made by such corporation.

In April 1993, appellant Watson was approached by the landlord at Phipps Plaza about Mon Petit Chou, Inc. opening another store at their new mall at North Point Mall, because Mon Petit Chou, Inc. was a tenant of theirs at Phipps. Appellant became president of Watson, Inc. after its incorporation on June 18, 1993. On June 22, 1993, Watson, Inc. was entered on the lease for the retail space in North Point Mall in place of Mon Petit Chou, Inc. and the lease was executed by appellant as president of Watson, Inc.

Appellant testified that, early in 1993, probably on or before April 18, 1993, and prior to executing the North Point Mall lease on June 22, 1993, in her corporate officer capacity for Watson, Inc., she began discussions with Larry Wolfe, representing appellee, regarding the build-out of the retail space at North Point Mall once the lease was signed. The meeting took place approximately six to eight months prior to the opening of the North Point store on October 20, 1993. Wolfe suggested to appellant that the architectural firm Holland Architects, P.C. be used to design the layout, and a contract was signed with Holland Architects, P.C. to design the layout. However, the contract was entered into between Mon Petit Chou, Inc. and Holland Architects, P.C. Appellant testified that, during this initial meeting with Wolfe and the architect, Steve Holland, appellant explained to Wolfe the corporation's financial restraints of $50,000 to be paid by the landlord for the build-out and the time constraints of the lease as set by the landlord upon the corporate tenant, Watson, Inc. Appellant did not specifically identify the corporation as Watson, Inc. To receive $25,000 of the $50,000 build-out fund from the land-

lord, the tenant had to open by a certain date or such funds would not be available under the lease; no agreement was reached at this meeting.

The record demonstrates that, in total, the discussions and arrangements between Wolfe and appellant were very vague. Appellant testified that no agreement was reached as to the essentials of the contract: the specific work to be performed, the price for the work, or the performance and completion date for the work. Wolfe indicated to appellant early in the discussions that the build-out would probably exceed the landlord construction allowance of $50,000 and be around $70,000. Appellant had expected to pay the excess $20,000 from a bank loan she was unable to obtain after making a loan application to two or three banks. Wolfe, Holland, and appellant met two or three times to come to some agreement as to the nature and extent of the work to be performed. However vague the discussion, appellee was authorized to proceed to do the build-out work on the retail space, and on April 18, 1993, a contract for architectural services was entered into between Mon Petit Chou, Inc., executed by appellant, and Holland Architects, P.C. to design the layout for the "Mon Petit Chou Store at North Point Mall . . . interior design for build-out of a new retail space."

According to appellant's testimony, during the initial meeting with Wolfe, appellant told him that there would be a new corporate entity, that she was starting a "whole new business," and that there would be a new corporate address. However, appellant never told either the architect or Wolfe at the first meeting that she was acting on behalf of Watson, Inc., because appellant assumed that Wolfe would know that she was representing the business and not herself individually.

The plans and details for the build-out were not completed until August 24, 1993, when appellee began work. On September 27, 1993, appellee made a draw request of $40,299 for all the work performed from August 24, 1993 through September 27, 1993; Watson, Inc. paid appellee $25,000 by a counter check, dated October 31, 1993, and drawn on the Watson, Inc. bank account because no corporate checks had been printed at that time and the counter check did not have the corporate name and had only appellant's signature. Watson, Inc. was not incorporated until June 18, 1993. Appellant, in her own name, also purchased a chandelier from Georgia Lighting, which was installed in the North Point store.

Appellant denied that she individually entered into any express contract with appellee or that appellee ever gave to her any indication that appellee believed that appellant was acting in an individual capacity. All appellee's correspondence to appellant was sent to the business address of Watson, Inc., although it was not addressed to

the corporation but to its registered trade name, Mon Petit Chou, which was not registered until October 7, 1993. Such correspondence was dated September 27, 1993, and November 15, 1993. Appellant never paid appellee individually; only Watson, Inc. paid appellee.

On March 18, 1994, appellee sued Watson, Inc. d/b/a Mon Petit Chou for the unpaid balance of the labor, costs, and materials for the build-out of the retail space at North Point Mall in the amount of $70,250 for work done between August 24, 1993, and December 7, 1993, on an open account under OCGA § 7-4-16, quantum meruit under OCGA § 9-2-7, as well as costs of litigation under OCGA § 13-6-11. Watson, Inc. went into default by not responding. Appellee moved on January 23, 1995, to amend and to add as additional parties appellant and her husband contending that they were the parties with whom oral contracts had been entered into by appellee. By order filed on February 28, 1995, the additional parties were added. On July 24, 1995, appellee filed a motion for partial summary judgment against appellant, seeking a determination as a matter of law that appellant hired appellee to perform construction services; that appellee performed the services; and that appellant is indebted to appellee for such services. On November 21, 1995, the trial court granted partial summary judgment for appellee and against appellant. Notice of appeal was filed on November 21, 1995. The appeal was docketed on October 16, 1996.

On November 26, 1996, appellee filed a motion for penalty for filing a frivolous appeal. Such petition is hereby denied by this Court.

The sole enumeration of error is that the trial court erred in granting the motion for partial summary judgment for Sierra Contracting Corporation and against Susan Watson as to personal liability for the debts of Watson, Inc.

(a) *Appellant's personal liability.* "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

"The rule in Georgia is that the testimony of a party who offers [herself] as a witness in [her] own behalf at trial ' "is to be construed most strongly against [her] when it is self-contradictory, vague or equivocal." ' *Douglas v. Sumner,* 213 Ga. 82, 85 (97 SE2d 122) (1957); *W & A Railroad Co. v. Evans,* 96 Ga. 481 (23 SE 494) (1895). Where the favorable portion of a party's self-contradictory testimony is the only evidence of [her] right to recover or of [her] defense, the oppos-

ing party is entitled to a directed verdict. *Douglas v. Sumner*, supra. . . . Early on the courts determined that if on summary judgment a party offered self-contradictory testimony on the dispositive issue in the case, and the more favorable portion of [her] testimony was the only evidence of [her] right to a verdict in [her] favor, the trial court must construe the contradictory testimony against [her]. This being so, the opposing party would be entitled to summary judgment. The courts reasoned that this is the correct result because if the case went to trial under the same evidence, the party offering self-contradictory testimony would have a verdict directed against [her]. *Dykes v. Hammock*, 116 Ga. App. 389 (157 SE2d 524) (1967). Once the trial court has eliminated the favorable portions of the contradictory testimony, it must take all testimony on motion for summary judgment '*as it then stands*, and construe it in favor of the party opposing the motion in determining whether a summary judgment should be granted.' *Chandler v. Gately*, 119 Ga. App. 513, 514 (167 SE2d 697) (1969). The courts concluded that this rule must necessarily be applied to summary judgment proceedings, otherwise, 'any opposing party may, by the simple device of filing conflicting affidavits, get the motion denied. The temptations to perjury are greater in this situation than in a jury trial. . . . The conflict can easily be avoided. A party knows what [she] has sworn. If [she] has discovered error, it can be explained in [her] affidavit.' [Id.] at 523. . . . *Burnette Ford[, Inc.] v. Hayes*, [227 Ga. 551 (181 SE2d 866) (1971)], states the general rule that on motion for summary judgment all evidence is to be construed against the movant. . . . We conclude therefore that both *Chambers v. C & S [Nat. Bank]*, 242 Ga. 498 (249 SE2d 214) (1978), which applied the contradictory testimony rule to a motion for summary judgment, and *Combs v. Adair Mortgage Co.*, 245 Ga. 296 (264 SE2d 226) (1980), which distinguished *Chambers* from *Burnette Ford*, were correctly decided. Accord *King v. Brasington*, [252 Ga. 109 (312 SE2d 111) (1984)]." (Footnote omitted.) *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986).

To determine if testimony is contradictory, "[t]he standard to be applied is: (1) determine whether the testimony of the party is contradictory, (2) if a reasonable explanation is offered for the contradiction, that testimony will not be construed against the party, (3) the burden is on the party giving the testimony to offer a reasonable explanation, and (4) whether this has been done is an issue of law for the trial judge." *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987). It must be inferred that the trial court went through such analysis prior to granting summary judgment where the conflict goes to the essential facts supporting appellant's defense, no explanation for the conflict appears in the record, and the trial

court took the least favorable testimony of the appellant that was in conflict.

Appellant's testimony is conflicting as to what she told Wolfe and Holland during the first meeting on April 18, 1993, and when other information was allegedly imparted. For example, appellant testified that she told Wolfe and Holland that she was acting not in her personal capacity but in a representative capacity for Watson, Inc., even though Watson, Inc. did not come into legal existence until June 18, 1993. Other conflicts include her explanation of why, in early April 1993, the landlord at Phipps Plaza, who was building North Point Mall, wanted Mon Petit Chou, Inc. to open a store there even though the lease in the name of Mon Petit Chou, Inc. and the architect contract with Mon Petit Chou, Inc. were really contracts with Watson, Inc. under the registered trade name Mon Petit Chou, a trade name which was not even registered until October 7, 1993. Finally, appellant asserted that Wolfe knew that Watson, Inc. was the legal entity because appellee cashed the counter check with no corporate name or address on it which was drawn on the Watson, Inc. account or because letters to appellant addressed to Mon Petit Chou at 3500 Peachtree Road indicated an awareness of this address as Watson, Inc.'s corporate address, as well as the corporate address of Mon Petit Chou, Inc. While appellant's most favorable testimony created a material issue of fact, appellant's denial that she acted on her own behalf or on behalf of any entity other than Watson, Inc. directly conflicts with her other testimony describing what she signed and what she did. The trial court was correct in construing her testimony to show that she had never revealed or disclosed that she was acting as an agent for an undisclosed principal, Watson at North Point, Inc. d/b/a Mon Petit Chou, which did not come into legal existence until June 18, 1993, and did not register the trade name until October 7, 1993, long after the meetings and negotiations had taken place. Appellant produced no evidence that she disclosed to appellee or the architect after June 18, 1993, that they were dealing with Watson, Inc., which thereafter had corporate existence. While the actual work performed by appellee occurred after August 24, 1993, and continued until December 7, 1993 at the North Point Mall store location leased by Watson, Inc., the appellant has failed to rebut appellee's evidence that appellee was ever made aware of the identity of the beneficiary of such work.

The proper legal analysis of the case sub judice is under agency. Under OCGA § 10-6-54, a party dealing with the agent of another, undisclosed principal has an action either against the principal or the agent. *Kingsberry Homes v. Findley*, 242 Ga. 362, 364 (2) (249 SE2d 51) (1978).

"In order to avoid personal liability an agent is under a duty to

disclose the fact of his agency and the identity of his principal, and one who deals with an agent who fails to disclose his principal may at his election recover from either the agent or the principal. The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal." (Citations and punctuation omitted.) *Reed v. Intl. Security Svc.*, 215 Ga. App. 60 (449 SE2d 888) (1994); see also *Collins v. Brayson Supply Co.*, 157 Ga. App. 438 (278 SE2d 87) (1981); *Dinkler Mgmt. Corp. v. Stein*, 115 Ga. App. 586, 590 (155 SE2d 442) (1967); *Brown-Wright Hotel Supply Corp. v. Bagen*, 112 Ga. App. 300 (145 SE2d 294) (1965); *Roberts v. Burnette*, 72 Ga. App. 775 (35 SE2d 201) (1945).

Appellant, having failed to disclose the identity of her principal throughout the transaction, may be liable instead of the principal at the election of the party vested with the cause of action. See *Kingsberry Homes v. Findley*, supra at 364. "The contract liability of a principal and his agent is not joint, and after election to proceed against one, the other cannot be held." Id. at 365; see also *Lippincott & Co. v. Behre*, 122 Ga. 543, hn. 3, 545 (50 SE 467) (1905); *Dinkler Mgmt. Corp. v. Stein*, supra at 590; *Washburn Storage Co. v. Elliott*, 93 Ga. App. 456 (2) (92 SE2d 28) (1956); *Roberts v. Burnette*, supra at 777; *Willingham, Wright & Covington v. Glover*, 28 Ga. App. 394, 396 (3) (111 SE 206) (1922). An election occurs not when the principal and agent are sued but when final judgment is taken against either; until there exists a final judgment against either the principal or the agent, no irrevocable election has been made. See generally *Lippincott & Co. v. Behre*, supra at 546-547. Had appellee taken a default judgment against Watson, Inc., then an election would have been made and no action could be brought against appellant; however, since no judgment has been taken against Watson, Inc., appellant is subject to suit individually.

OCGA § 14-2-204 states that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting," and bases such liability on a modification and codification of the common law rules regarding agency. See *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 833-834 (1) (446 SE2d 186) (1994); see also *Wells v. Fay & Egan Co.*, 143 Ga. 732, 733 (1) (85 SE 873) (1915). Appellant knew that the corporate charter had not been issued until June 18, 1993, because the execution page of the lease shows her signing the lease July 23, 1993, as president for Mon Petit Chou, Inc., but changing the execution to June 22, 1993, four days after the incorporation of Watson, Inc., to president of Watson, Inc., which clearly demonstrates knowledge of the date of incorporation. However, appellant entered into no binding contracts prior to the

incorporation, although appellant told appellee to go ahead with the build-out, which was not a contract but contract formation that never came to fruition and remained too vague and indefinite to constitute an enforceable contract. Thus, efforts to formulate a contract which never came into existence created no potential liability under OCGA § 14-2-204. See *Satellite Syndicated Systems v. Henderson*, 162 Ga. App. 453 (291 SE2d 749) (1982).

The trial court did not err in granting partial summary judgment and finding that appellant could be found individually liable for the construction work performed by appellee. However, the trial court by summary judgment could not find liability under any theory of recovery, because there were disputed material issues of fact under each theory.

(b) *Action on open account.* An action on open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as to the amount due or the goods or services received. *Johnson v. Quin*, 52 Ga. 485 (1874). An action on open account may be brought for materials furnished and work performed. *Southern Express Co. v. Hunnicutt & Turner*, 5 Ga. App. 262 (63 SE 26) (1908). However, if there is a dispute as to assent to the services or to acceptance of the work done or as to what work was to be performed and the cost, then an action on open account is not a proper procedure. *Lawson v. O'Kelley*, 81 Ga. App. 883, 885 (1) (60 SE2d 380) (1950); *Craig v. Augusta Roofing & Metal Works*, 78 Ga. App. 514, 515 (1) (51 SE2d 565) (1949). A suit on account must be based either on an express or an implied contract. *Devine v. Geiger*, 100 Ga. App. 245 (110 SE2d 687) (1959).

In the case sub judice, there exists no express contract. On the other hand, there may be evidence that can establish an implied contract with appellant because although there never was an agreement as to the terms, compensation, or work, there appears to be acceptance of the work; however, the acceptance of the work performed appears to be for the benefit of another. Furthermore, appellant never agreed to be personally bound and never had a meeting of the minds as to an agreement. See *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assoc.*, 250 Ga. 391, 395 (297 SE2d 733) (1982); *Jack V. Heard Contractors v. A. L. Adams Constr. Co.*, 155 Ga. App. 409, 412 (271 SE2d 222) (1980), overruled on other grounds, *Southeast Ceramics v. Klem*, 156 Ga. App. 636 (275 SE2d 723) (1980); *Fonda Corp. v. Southern Sprinkler Co.*, 144 Ga. App. 287, 290 (1) (241 SE2d 256) (1977). Thus, to the extent that the trial judge found liability on an action on open account, the trial court erred because there remains disputed issues of material fact under such theory of liabil-

ity for jury determination.

(c) *Action for quantum meruit or unjust enrichment.* Under OCGA § 9-2-7, this Code section provides an action for quantum meruit where services were rendered and materials were furnished, and which were accepted by and valuable to the recipient; acceptance and benefit conferred upon the recipient gives rise to the presumption of a legal obligation to pay for the value. Quantum meruit is not available when there is an express contract; however, if the contract is void, is repudiated, or can only be implied, then quantum meruit will allow a recovery if the work or service was accepted and if it had value to the recipient. See *Stowers v. Hall,* 159 Ga. App. 501, 502 (3) (283 SE2d 714) (1981); *Brumby v. Smith & Plaster Co. of Ga.,* 123 Ga. App. 443, 444 (1) (181 SE2d 303) (1971).

Even if no express or implied contract arose between the parties, an obligation to pay arises upon the theory of unjust enrichment where a benefit has been conferred upon the party sought to be held liable for the value, which is analogous to quantum meruit in that the duty to pay arises out of the receipt of a benefit. See *White v. Arthur Enterprises,* 219 Ga. App. 124 (464 SE2d 225) (1995); *Mabry v. Pelton,* 208 Ga. App. 891 (432 SE2d 588) (1993); *Regional Pacesetters v. Halpern Enterprises,* 165 Ga. App. 777 (300 SE2d 180) (1983); *City of Commerce v. Duncan & Godfrey, Inc.,* 157 Ga. App. 337 (277 SE2d 266) (1981). A party cannot receive and retain the benefit of another's labor without the duty to pay for the reasonable value of such work. See *Henry v. Moss,* 99 Ga. App. 623 (109 SE2d 313) (1959); *Woodruff v. Trost,* 73 Ga. App. 608 (37 SE2d 425) (1946).

Value of services is not to be determined from the perspective of the party rendering the services and materials, but must be determined from the perspective of the recipient to determine to what extent the party was benefited or enriched by such services; otherwise, ineffective, defective, or worthless services could create liability for the recipient. The value of services from the perspective of the recipient is uniquely that of opinion and is for jury determination as to value, if any. *Williams v. Claussen-Lawrence Constr. Co.,* 120 Ga. App. 190 (169 SE2d 692) (1969); see also *Stowers v. Hall,* supra at 502; *Fonda Corp. v. Southern Sprinkler Co.,* supra at 292; *Mitchell & Pickering v. Louis Isaacson, Inc.,* 139 Ga. App. 733 (229 SE2d 535) (1976); *Pembroke Steel Co. v. Technical Sales Assoc.,* 138 Ga. App. 744 (227 SE2d 491) (1976); *Brumby v. Smith & Plaster Co. of Ga.,* supra at 444.

Appellee has available as alternative theories of liability to an action on open account, quantum meruit if there is an implied contract proven or unjust enrichment if there is no implied contract. Each theory must be proven before there is liability by appellant.

To the extent the trial court determined liability under the

theory of quantum meruit as a matter of law, the trial court erred because whether or not appellant received any benefit from appellee's work and is liable for such payment is a question of fact for the jury.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED APRIL 3, 1997.

Before Judge Alexander.

*Holland & Knight, Elizabeth C. Helm, Caroline W. Johnson*, for appellant.

*Ashenden, Flynn & Gottlieb, Jon A. Gottlieb*, for appellee.