508 S.E.2d 750 (1998)
235 Ga. App. 333
ZAMPATTI
v.
TRADEBANK INTERNATIONAL FRANCHISING CORPORATION et al.
TRADEBANK INTERNATIONAL FRANCHISING CORPORATION et al.
v.
ZAMPATTI.
Nos. A98A2368, A98A2428.
Court of Appeals of Georgia.
November 3, 1998.
Reconsideration Denied November 18, 1998.
*753 Flint & Connolly, Douglas H. Flint, Canton, John F. Connolly, Norcross, for appellant.
Gerry, Friend & Sapronov, William D. Friend, Mari Myer, Atlanta, for appellees. *751
*752 ELDRIDGE, Judge.
Tradebank International, Inc. ("TII") owns a system of reciprocal brokerage of goods and services, i.e., barter and trade, among its clients and acts as the keeper of records for the transactions between its clients for which it receives compensation. Tradebank International Franchising Corporation ("TIFC") is the wholly owned subsidiary of TII. TIFC acts to franchise TII's regional operations and has granted several franchises with exclusive territories.
On June 23, 1995, Ricardo J. Zampatti ("Zampatti") entered into a franchise agreement with TIFC; the franchise was known as Tradebank Atlanta North. Previously, he had been under a regional management agreement with TII and was reluctant to enter into the franchise agreement with TIFC but did so. The original exclusive franchise territory was: Bartow, Cherokee, Dawson, Forsyth, and Pickens Counties and those portions of Fulton County within Zip Codes 30075, 30076, 30136, and 30201. Zampatti was to facilitate the reciprocal brokerage of goods and services, i.e., barter, among TII's clients.
On March 1, 1996, Zampatti was terminated by written notice as a franchisee; however, Zampatti told TII's clients that both TII and TIFC were going out of business and that he was starting a successor company to take over TII's and TIFC's business to serve them.
TIFC and TII sued Zampatti in a five count complaint: Count 1 for breach of a noncompete and nonsolicitation agreement with TIFC; Count 2 for tortious interference with contract with TIFC's and TII's clients; Count 3 for open account with TII; Count 4 in the alternative for quantum meruit with TII; and Count 5 for OCGA § 13-6-11 attorney fees for bad faith, stubbornly litigiousness, and unnecessary trouble and expense for TIFC and TII. Zampatti answered and counterclaimed: Count 1 breach of contract in six parts: 1. for failure to pay commissions; 2. breach of contract for failure to provide franchisee support; 3. for violation of unspecified State and Federal laws and regulations; 4. breach of contract to clients; 5. failure to file with the IRS and the Georgia Department of Revenue; 6. improper accounting as breach of contract; Count 2 breach of fiduciary duty; Count 3 fraud; and Count 4 deceit.
*754 On September 30, 1997, TII and TIFC moved for summary judgment and request for oral argument. On December 11, 1997, oral argument was held although defense counsel did not appear, but written notice was mailed on October 28, 1997. At the time of oral argument, defense counsel was called, but he denied having received notice. Oral argument proceeded and defense counsel obtained a copy of the transcript and the trial court permitted him to submit a supplemental brief in lieu of oral argument. The supplemental defense brief was filed December 26, 1997. Without an order granting permission to file affidavits after the hearing, Zampatti filed on December 24, 1997, supplemental affidavits of Jennifer Walker and Thomas Walker, and his personal affidavit on January 23, 1998. Upon motion by TII and TIFC, the trial court struck such affidavits as untimely filed.
On January 29, 1998, after TII and TIFC filed motions for summary judgment and prior to the trial court's oral argument on the motion for summary judgment, Zampatti filed a cross-motion for summary judgment, raising many of the same issues as addressed in the pending ruling; however, he never had his motion set down for hearing or had the two motions set to be argued on the same date. In fact, Zampatti did not request in writing oral argument.
On May 19, 1998, the trial court granted partial summary judgment to TII and TIFC as to its claims and as to its motion as to Zampatti's counterclaim and denied summary judgment as to Zampatti's motion for summary judgment. Zampatti filed his notice of appeal.
1. Zampatti's first enumeration of error is that the trial court erred in finding that Zampatti breached the franchise agreement. We do not agree.
Zampatti's brief in argument, citation to the record, and authorities do not address this enumeration at all. Under Court of Appeals Rule 27(c)(2), (3) such enumeration is deemed abandoned. However, the Court will address the issue nonetheless, because it is dispositive of other enumerations.
Under the franchise agreement, Zampatti was not to compete with TII or TIFC within his territories or solicit business from the clients for one year following his termination, for any reason. In March 1996, Zampatti formed The Barter Company, Inc. ("BCI"), which performed the same activities that he engaged in while a franchisee. From March 1996 through March 1997, at his former franchise address, Zampatti engaged in the barter business within his former territory and solicited clients of TII and TIFC. During the 12 months in the territory, Zampatti took 27 of TII's former clients and solicited business from another 24 TII clients. Such solicitation of TII's clients by Zampatti caused it financial losses. Thus, there was undisputed evidence that Zampatti breached the franchise agreement.
2. Zampatti's second and third enumerations are that the trial court erred in not considering the timely filed affidavits and in striking the supplemental affidavit testimony of Thomas and Jennifer Walker. We do not agree.
(a) On March 26, 1996, Thomas and Jennifer Walker signed affidavits to be used in opposition to any injunction; on October 29, 1997, the affidavits were filed. Thomas Walker testified that he had worked from January 1995 until September 1995 as president of TIFC, when he resigned. Jennifer Walker testified that she was Chief Financial Officer of TII from approximately June until August of 1995, when she resigned. Both testified that they learned that TII had been: a. "failing or refusing to produce financial statements"; b. "manipulating corporate checking accounts, including floating, `kiting' and otherwise issuing bad checks"; c. "failing to carry proper insurance, including insurance for workers' compensation, liability, and unemployment benefits"; d. "failing to pay or otherwise comply with state and federal tax laws;" and e. "withdrawing funds from the corporation for personal use without documentation or actual expenses, and often in the name of a third party."
OCGA § 9-11-56(e) mandates that affidavits "shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to *755 testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
Such general bare allegations in the affidavits were not stated with specificity as to times, places, party or parties, transactions, occasions, or events so as to constitute statements of facts. Where the affidavits failed to set forth any factual basis for the conclusions and contentions, then they were insufficient to oppose a motion for summary judgment. See Parlato v. MARTA, 165 Ga.App. 758, 302 S.E.2d 613 (1983). These allegations were made in support of the conclusion that TII or Davis "were conducting business in a manner contrary to the terms and intent of these franchise agreements" and "[t]his conduct outlined above seriously imperiled the viability, marketability and continued existence of TII, TIFC and the Tradebank system, including each franchisee and member within that system, including Tradebank Atlanta North owned by Ricardo J. Zampatti." As mere conclusions, they cannot oppose a motion for summary judgment. Sullivan v. Fabe, 198 Ga.App. 824, 403 S.E.2d 208 (1991); Collins v. West Am. Ins. Co., 186 Ga.App. 851, 368 S.E.2d 772 (1988); Belcher v. Logan, 150 Ga.App. 249, 257 S.E.2d 299 (1979).
Such conclusions are not admissible as the opinion of a layperson, because insufficient facts were stated to lay a proper foundation for a lay opinion. OCGA § 24-9-65; Johnson v. Knebel, 267 Ga. 853, 485 S.E.2d 451 (1997). Nor are such conclusions admissible as the opinion of an expert, because neither Jennifer Walker nor Thomas Walker were qualified in the affidavits as expert witnesses through training, skill, or experience to render an expert opinion. OCGA § 24-9-67; Martin v. Baldwin, 215 Ga. 293, 110 S.E.2d 344 (1959).
Mere conclusions are insufficient to overcome evidence of necessary certitude; opposing affidavits "must set forth specific facts." Neither affidavit contains material facts and were properly not considered by the trial court. See Love v. Love, 259 Ga. 423, 383 S.E.2d 329 (1989); Keene v. Herstam, 225 Ga.App. 115, 483 S.E.2d 335 (1997); Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs., 218 Ga.App. 315, 461 S.E.2d 282 (1995); Concert Promotions v. Haas & Dodd, Inc., 167 Ga.App. 883, 307 S.E.2d 763 (1983); Norris v. Kunes, 166 Ga.App. 686, 305 S.E.2d 426 (1983); Scroggins v. Whitfield Fin. Co., 152 Ga.App. 8, 262 S.E.2d 168 (1979); Resolute Ins. Co. v. Norbo Trading Corp., 118 Ga.App. 737, 748(3), 165 S.E.2d 441 (1968).
Further, Jennifer Walker worked from "approximately June to August of 1995" as Chief Financial Officer, so that she could have only personal knowledge for such limited period of time; however, she does not specify for what time period her allegations a. through e. cover. Anything before June 1995 and during or after August 1995 would be outside her personal knowledge; during and after August 1995, she would have no access to know what she purports to have testified to; thus, application of the affidavit to time prior to and after her employment must be disregarded for her lack of personal knowledge. The same is true for Thomas Walker for the periods prior to January or after September 1995. See Morris-Bancroft Paper Co. v. Coleman, 188 Ga.App. 809, 374 S.E.2d 544 (1988); Summer v. Allison, 127 Ga.App. 217, 193 S.E.2d 177 (1972). Thus, they were incompetent to testify of their own personal knowledge as to times when they were not employed. Watkins Prods. v. England, 123 Ga.App. 179, 180 S.E.2d 265 (1971); Ireland v. Matthews, 120 Ga.App. 510, 171 S.E.2d 387 (1969). Where lack of personal knowledge as to some evidence can be shown from the affidavit despite a claim of personal knowledge, such portion of the affidavit shall be disregarded by the trial court. Sullivan v. Fabe, supra at 824, 403 S.E.2d 208; see also Morris-Bancroft Paper Co. v. Coleman, supra at 809, 374 S.E.2d 544.
However, prior to June 1995, as Chief Financial Officer, she would have access to accounts, books, records, files, checks, or statements upon which to base an opinion or hearsay exception; but, under OCGA § 9-11-56(e) such documents would have to be attached to the affidavits for such opinion to be admissible or as a business record exception to the hearsay rule. See OCGA § 24-3-14; *756 Val Preda Motors v. Nat. Uniform Svc., 195 Ga.App. 443, 393 S.E.2d 728 (1990); Landers v. Ga. Baptist Med. Ctr., 175 Ga.App. 500, 333 S.E.2d 884 (1985); Gunnin v. Swat, Inc., 195 Ga.App. 344, 393 S.E.2d 700 (1990); Thomasson v. Trust Co. Bank, 149 Ga.App. 556, 254 S.E.2d 881 (1979). Likewise, Thomas Walker would have access to such records prior to January 1995; however, this would not provide personal knowledge. No such documents were attached to the affidavits; therefore, their allegations were excluded either as hearsay, opinions without foundation, or bare allegations, not facts. Pratt v. Tri City Hosp. Auth., 193 Ga.App. 473, 388 S.E.2d 69 (1989). Thus, the allegations are based on matters not in the record and not admissible in evidence. Nettles v. Laws, 172 Ga.App. 241, 322 S.E.2d 546 (1984); Davis v. Haupt Bros. Gas Co., 131 Ga.App. 628, 206 S.E.2d 598 (1974); Chandler v. Gately, 119 Ga.App. 513, 167 S.E.2d 697 (1969). As hearsay, such testimony must be excluded. Bonds v. John Wieland Homes, 177 Ga.App. 254, 339 S.E.2d 318 (1985). The trial court did not err in disregarding such inadmissible evidence.
(b) OCGA § 9-11-56(c) and Uniform Superior Court Rules 6.2 and 6.3 mandate the time within which the respondent may file evidence in opposition to summary judgment; either within 30 days of service of the motion or on the day prior to the scheduled hearing. Since the movant made a request for oral argument under Rule 6.3, then under OCGA § 9-11-56(c) Zampatti had until December 10, 1997, to file any evidence in opposition to the motion. On December 11, 1997, Zampatti knew that the hearing on the motion had taken place; nonetheless, Zampatti, without requesting leave of the court for permission to file late affidavits, filed his own affidavit and supplemental affidavits for the Walkers on December 24, 1997, fourteen days late and three days after his supplemental responsive brief was due.
A motion to strike is the proper procedure to attack untimely filed affidavits. See Vickers v. Chrysler Credit Corp., 158 Ga.App. 434, 440(4), 280 S.E.2d 842 (1981); Ford v. Ga. Power Co., 151 Ga.App. 748, 749(2), 261 S.E.2d 474 (1979). "It is well settled that the trial court has the discretion to decide whether it will consider affidavits not served within the time limits contemplated by the statutes." Washington v. Ga. Baptist Med. Center, 223 Ga.App. 762, 764(1), 478 S.E.2d 892 (1996); see also Hayes v. Murray, 252 Ga. 529, 530, 314 S.E.2d 885 (1984); Liberty Nat. Life Ins. Co. v. Houk, 248 Ga. 111, 112(1), 281 S.E.2d 583 (1981); Coastal Plains Trucking Co. v. Thomas County Fed. Sav. &c. Assn., 224 Ga.App. 885, 886-887, 482 S.E.2d 493 (1997); Talley v. City Tank Corp., 158 Ga.App. 130, 133(2), 279 S.E.2d 264 (1981). Thus, the trial court did not abuse its discretion in not considering the untimely filed affidavits.
3. Zampatti's fourth enumeration of error is that the trial court erred in finding that the noncompete provisions of the agreement were enforceable. We do not agree.
Zampatti does not attack the restrictive covenants with TIFC and TII as being unreasonable or unenforceable; instead, he contends that the underlying franchise agreement was breached by TIFC and TII so that the restrictive covenants therefore fail as terms of the agreement. He concedes that the restrictive covenant was reasonable as to duration, territory, and activity. See Electonic Data Systems Corp. v. Heinemann, 217 Ga.App. 816, 459 S.E.2d 457 (1995); Dominy v. National Emergency Svcs., 215 Ga.App. 537, 451 S.E.2d 472 (1994). Even as to the covenant not to solicit customers, Zampatti does not attack it as unreasonable, because it was narrowly drafted as to time, territory, and scope of activity. W.R. Grace & Co. v. Mouyal, 262 Ga. 464, 466-467, 422 S.E.2d 529 (1992).
Zampatti's entire attack is that TII and TIFC breached the franchise agreement so that the special covenants also fall. The franchise agreement provided for severability or survivability of the covenants from the franchise agreement; the covenants were to survive "for one (1) year after the termination of [the franchise] Agreement for any reason whatsoever." Therefore, "the covenants in the contract are independent," so that they must be enforced despite the possible breach of the underlying agreement by *757 TII or TIFC. See Orkin Exterminating Co. v. Harris, 224 Ga. 759, 760-761(1), 164 S.E.2d 727 (1968); Orkin Exterminating Co. v. Gill, 222 Ga. 760, 152 S.E.2d 411 (1966); Mansfield v. B. & W. Gas, 222 Ga. 259, 260(2), 149 S.E.2d 482 (1966); Circle Appliance Leasing v. Appliance Warehouse, 206 Ga.App. 405, 406(1), 425 S.E.2d 339 (1992); O.H. Carter Co. v. Buckner, 160 Ga.App. 627, 629, 287 S.E.2d 636 (1981). Since this was not an employment agreement but a franchise agreement, then these covenants survive as independent covenants. Johnstone v. Tom's Amusement Co., 228 Ga.App. 296, 297-298(1), 491 S.E.2d 394 (1997).
4. Zampatti's fifth enumeration of error is that the trial court erred in finding that Zampatti tortiously interfered with TII's contractual relationship with its client base. We do not agree.
"To prove tortious interference with [contractual] relations, [TII] would have to prove that [Zampatti] acted improperly and without privilege, acted purposely with malice and intent to injure, induced a third party or parties not to enter into or continue a business relationship with [TII], and thereby caused some financial injury." Rodgers v. First Union Nat. Bank, 220 Ga.App. 821, 823(1)(c), 470 S.E.2d 246 (1996); Green v. Johnston Realty, 212 Ga.App. 656, 659-660(4), 442 S.E.2d 843 (1994). "The term malicious or maliciously means any unauthorized interference or any interference without justification or excuse." St. Mary's Hosp. v. Radiology Professional Corp., 205 Ga.App. 121, 124(2), 421 S.E.2d 731 (1992); see also Green v. Johnston Realty, supra at 660, 442 S.E.2d 843.
The evidence is undisputed that Zampatti solicited business from 51 clients of TII after the agreement was terminated and induced 27 clients of TII to join BCI to the economic detriment of TII. At the time that Zampatti solicited such clients, he knew that they were TII's clients, because Zampatti had serviced them as a franchisee of TIFC. Such luring away of these clients deprived TII of revenue. Thus, the trial court properly granted summary judgment.
5. Zampatti's sixth enumeration of error is that the trial court erred in finding that TII should recover on its claim for quantum meruit. We do not agree.
Zampatti's contention is that the value of the goods and services ascribed for barter purposes differs from a cash or fair market value for such goods and services. He argues that the Tradebank dollar value is substantially less than that of actual currency. Such is a damages issue, because under quantum meruit damages are based upon the value of goods and services, i.e., benefit, to Zampatti and not to TII. Therefore, what Zampatti contends has not been proven and is a disputed issue of fact, i.e., the benefit conferred upon him, is exactly the issue that the trial court correctly left for jury determination.
A party could render substantial services or transfer goods to another that were of little benefit to the defendant; therefore, benefit is measured from the standpoint of the person upon whom such benefits were conferred. A jury must determine what reasonable benefit was, in fact, conferred to determine the recovery, i.e., damages. OCGA § 9-2-7 states: "[o]rdinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." "The theory of unjust enrichment applies when as a matter of fact there is no legal contract ..., but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." Regional Pacesetters v. Halpern Enterprises, 165 Ga.App. 777, 782(2), 300 S.E.2d 180 (1983); see also Ga. Tile Distributors v. Zumpano Enterprises, 205 Ga.App. 487, 488-489(1), 422 S.E.2d 906 (1992).
The measure of damages under quantum meruit or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods. See Watson v. Sierra Contracting Corp., 226 Ga.App. 21, 485 S.E.2d 563 (1997) (physical precedent only); Remediation Svcs. v. Georgia-Pacific *758 Corp., 209 Ga.App. 427, 433 S.E.2d 631 (1993); Smith Dev. v. Flood, 198 Ga.App. 817, 403 S.E.2d 249 (1991); Stowers v. Hall, 159 Ga.App. 501, 283 S.E.2d 714 (1981); Fonda Corp. v. Southern Sprinkler Co., 144 Ga. App. 287, 241 S.E.2d 256 (1977); City of Gainesville v. Edwards, 112 Ga.App. 672, 145 S.E.2d 715 (1965).
Since the trial court found all the other elements of quantum meruit from the undisputed evidence and Zampatti does not contest them, then it was not error to leave for the jury the determination of benefit conferred by the goods and services to Zampatti, which was a disputed issue of material fact.
6. Zampatti's seventh enumeration of error is that the trial court erred in finding that his counterclaim for breach of contract fails as a matter of law. We deem this enumeration abandoned.
This enumeration fails to cite to the record and suffers from the same defect of the counterclaim in the trial court below, i.e., it neither identifies the contract that was breached, the contract provision breached, nor the party, TII or TIFC, that he alleges breached the contract. Thus, under Court of Appeals Rule 27(c)(3), this enumeration is deemed abandoned.
7. Zampatti's eighth enumeration of error is that the trial court erred as a matter of law in granting summary judgment as to his counterclaim for fraud and deceit. We do not agree.
The alleged misrepresentations of material fact that Zampatti contends that he relied upon "tax liens, check kiting, mismanagement, misrepresentations of officers, and no financial reports" were attributed to TII; however, Zampatti in his deposition could not identify any false statement, either orally, contained in any document, or the franchise agreement, that he relied upon to his detriment or identify who made such false statement. Thus, there was a total failure on summary judgment to come forward with some evidence to raise an issue of material fact as to each element of the cause of action after TII and TIFC pierced the pleadings of the counterclaim with their evidence. See OCGA § 9-11-56(e); Lau's Corp. v. Haskins, 261 Ga. 491, 405 S.E.2d 474 (1991).
The elements of fraud are "(1) that the defendant made the representations; (2) that at the time he knew they were false (or what the law regards as the equivalent of knowledge) [scienter]; (3) that he made them with the intention and purpose of deceiving the plaintiff [causing plaintiff to act or refrain from acting in reliance thereon]; (4) that the plaintiff [justifiably] relied on such representations; (5) that the plaintiff sustained the alleged loss or damage as the proximate result of their having been made." Brown v. Ragsdale Motor Co., 65 Ga.App. 727, 730(3), 16 S.E.2d 176 (1941); see also Tolar Constr. Co. v. GAF Corp., 154 Ga.App. 127, 129, 267 S.E.2d 635 (1980). Zampatti has failed to come forward with evidence that would raise a material issue of fact that either TII or TIFC, or their agents, made specific misrepresentations or concealed material facts with the intent to mislead Zampatti to his detriment. Zampatti deposed that he did not know, i.e., of any misrepresentations or who made them, if made; he stated let an expert answer. Likewise, Zampatti fails to raise an issue of fact that he was misled to his detriment. Therefore, the trial court did not err in granting summary judgment.
8. Zampatti's ninth enumeration of error is that the trial court erred in not considering his motion for summary judgment and its related supporting materials. We do not agree.
Divisions 1 through 7 control as to the correctness of the trial court's grant of summary judgment to TII and TIFC on their claims and against Zampatti's counterclaim, which is preclusive of Zampatti's motion for summary judgment on the same or derivative issues that TII and TIFC breached the contract. The trial court ruled on the motions for summary judgment that were first filed, TII's and TIFC's, prior to Zampatti's later filed motion. Zampatti never asked for oral argument or for the motions to be heard or considered together.
The trial court ruled on Zampatti's motion after granting summary judgment to TII and TIFC, finding Zampatti's motion now moot. *759 To find Zampatti's motion moot, the trial court determined that there existed no material issues of fact or law that survived the granting of partial summary judgment on the claims of TII and TIFC and the granting of their motions for summary judgment against Zampatti's counterclaims and that were encompassed in Zampatti's motion for summary judgment. The trial court ruled that the granted summary judgment disposed of all the issues raised in Zampatti's motion and precluded such issues now being raised again, because such issues had been decided adversely to Zampatti. Finney v. Pan-American Fire &c. Co., 123 Ga.App. 250, 180 S.E.2d 253 (1971). We agree with the trial court.
9. Zampatti's final enumeration of error is that the trial court erred in not providing Zampatti proper notice of the oral argument on plaintiffs' motion for summary judgment. We do not agree.
Zampatti filed affidavits in opposition and a brief in opposition within 30 days of the TII's and TIFC's motion for summary judgment. Even if the trial court provided no notice of the oral argument on TII's and TIFC's motions for summary judgment, Zampatti failed to show harm, because the trial court had him orally notified on the day of the hearing on December 11, 1997 and allowed him ten days in which to file his supplemental brief in lieu of oral argument; he obtained a transcript of the oral argument. Compare Southeast Reducing Co. v. Wasserman, 213 Ga.App. 763, 764, 445 S.E.2d 859 (1994); Dixon v. McClain, 204 Ga.App. 531, 420 S.E.2d 66 (1992). Zampatti was afforded with substantially the equivalent of oral argument; in fact by filing the supplemental brief, he had a hearing and the last word in argument through his brief. See Orrel v. Amerada Hess Corp., 224 Ga. App. 625, 481 S.E.2d 624 (1997); Segrest v. Intown True Value Hardware, 190 Ga.App. 588, 589-591(2), 379 S.E.2d 615 (1989).
Ferguson v. Miller, 160 Ga.App. 436, 437, 287 S.E.2d 363 (1981) is not controlling for two reasons. First, Uniform Superior Court Rule 6.3 (effective July 1, 1985) was promulgated after the decision and controls. Dallas Blue Haven Pools v. Taslimi, 180 Ga.App. 734, 735-738(1), 350 S.E.2d 265 (1986) aff'd. 256 Ga. 739, 354 S.E.2d 160 (1987); see also Kelley v. First Franklin Fin. Corp., 256 Ga. 622, 351 S.E.2d 443 (1987). Second, under the facts of Ferguson v. Miller, supra, no notice was given at all or even attempted; in this case, the record shows that the trial court's clerk mailed written notice to defense counsel pursuant to OCGA §§ 9-11-5(b); 9-11-6(d). On the day of the hearing, defense counsel received oral notice of the hearing, so that he was able to respond prior to the entry of judgment on May 18, 1998. See generally Medders v. Commodore Fin. Svcs. Corp., 190 Ga.App. 618(1), 379 S.E.2d 561 (1989); Goodwin v. Richmond, 182 Ga.App. 745, 746-747(2), 356 S.E.2d 888 (1987).
Although Zampatti's counsel arrived at the trial court too late to argue, because opposing counsel had been excused, the trial court allowed him to file a supplemental brief in lieu of oral argument. Defense counsel did not immediately make a written objection to such procedure nor was an objection made in the supplemental brief. The first time that defense counsel raised a written objection on the record was after the entry of the summary judgment on May 18, 1998 in their motion to reconsider and their personal affidavits filed on June 18, 1998. Zampatti's failure to file a written objection on the record at the earliest opportunity to the trial court's procedure, and the acceptance of such procedure in writing, such acts or omissions constituted waiver of any defect in the notice and the trial court's alternative procedure. Mobley v. Coast House, Ltd., 182 Ga.App. 305, 308-309, 355 S.E.2d 686 (1987); Dixon v. Midland Ins. Co., 168 Ga.App. 319, 309 S.E.2d 147 (1983); Connell v. Connell, 119 Ga.App. 485, 488(4), 167 S.E.2d 686 (1969).
The trial court under the facts and circumstances of this case did not err in hearing oral argument on December 11, 1997, without opposing counsel and in ruling on the motion on May 18, 1998, after Zampatti's counsel had ample opportunity to further respond in opposition to the motion.
Cross-Appeal
10. TII's sole enumeration of error is that the trial court erred in denying its *760 motion for summary judgment on the action on open account. We do not agree.
"`[A]n open account is one in which some item of contract is not settled by the parties.'" Allied Store Utilities Co. v. Bennett, 64 Ga.App. 524, 528, 13 S.E.2d 906 (1941). "Black defines an open account as one `which has not been finally settled or closed, but is still running or open to future adjustment or liquidation.' Black's Law Dictionary. Georgia law agrees with this definition. [Cit.]" Gage v. Tiffin Motor Homes, 153 Ga.App. 704, 706(1), 266 S.E.2d 345 (1980). Absent a contractual relationship an action on open account is not the proper theory of recovery and procedure to use. Lawson v. O'Kelley, 81 Ga.App. 883, 60 S.E.2d 380 (1950). "[A] suit on an open account may be maintained for the price of goods sold under a contract where the price has been agreed upon by the seller and purchaser and where the seller has performed his part of the agreement and nothing remains to be done except for the purchaser to make payment." Wolfe v. Brown-Wright Hotel Supply Corp., 87 Ga.App. 12, 73 S.E.2d 82 (1952). A suit on an open account may be based on either an express or implied promise to pay. Gordy Tire Co. v. Bulman, 96 Ga.App. 739, 101 S.E.2d 220 (1957). However, there cannot be other elements in dispute other than payment.
When the value of the goods and services was not agreed upon prior to performance and is in dispute at trial so that the measure of damages is the reasonable value of such services or goods delivered, then the action should be in quantum meruit. Because an action on open account is a simplified procedure where the price or value of the goods and services is not in dispute but is agreed upon and the only issue remaining is payment. Watson v. Sierra Contracting Corp., supra; Brown v. Home Security Corp., 106 Ga.App. 147, 126 S.E.2d 439 (1962); see also Wolfe v. Brown-Wright, supra. If there is a dispute as to the cost to be charged for services rendered or the price of the goods, then an action on open account is not the proper procedure to collect the debt. See Lawson v. O'Kelley, supra at 885(1), 60 S.E.2d 380; Craig v. Augusta Roofing &c. Works, 78 Ga.App. 514, 515(1), 51 S.E.2d 565 (1949); see also Watson v. Sierra Contracting Corp., supra at 27, 485 S.E.2d 563.
Under the facts of this case, the debt incurred was in the barter-trade system, where payment was not in currency but in services or goods credited under the agreement at a certain barter system rate. Therefore, when the client agreement was terminated, Zampatti could no longer satisfy his obligation within the barter system on any amount owed on open account in the barter system. Since the true currency value of the barter or trade debt was not a true one to one ratio, despite any contractual terms to the contrary which may not have survived the termination of the agreement, then the reasonable value of the goods and services representing the open account debt in the barter system was a question of fact as to reasonable value, which should be decided as quantum meruit by a jury. See Watson v. Sierra Contracting Corp., supra at 28(c), 485 S.E.2d 563; Brown v. Home Security Corp., supra at 150, 126 S.E.2d 439. Therefore, the trial court did not err in denying summary judgment on such theory of action on open account.
Judgment affirmed.
McMURRAY, P.J., and BLACKBURN, J., concur.