A03A0596, A03A0597. GAY et al. v. STRAIN et al.; and vice versa.
(583 SE2d 529)

SMITH, Chief Judge.

These companion cases arise from the bench trial of a property line dispute. Appellants Bobbie F. Gay, Wayne Clemans, and Sandra Clemans appeal from the trial court's decision regarding the location of the property line, contending that they showed title by prescription of the disputed land "under color of title." They also complain that the trial court erred in refusing to admit a sketch map or diagram of the property into evidence. We find no error and affirm the trial court's decision with respect to Case No. A03A0596.

Appellees Sarah Strain and Harriet Burman filed a cross-appeal complaining of the trial court's decision requiring them to reimburse appellants for structures and improvements that appellants and their predecessors erected upon the disputed property. But OCGA § 44-11-9 clearly provides for a set-off of the value of all permanent improvements "placed on the land in good faith." The trial court as the finder of fact concluded that the improvements were made in good faith. We therefore find no error, and we affirm the trial court's judgment in Case No. A03A0597 as well.

Strain and Burman own a tract of land in Dade County as the

---

[2] *Fulton County Bd. of Tax Assessors v. Boyajian,* 271 Ga. 881 (1) (525 SE2d 687) (2000).

sole heirs of the estate of Mamie Louise Stephenson. The tract consists of virtually all of Land Lot 133 in the Eighteenth District and Fourth Section of the county, less one acre previously conveyed to another. Gay, as administratrix of the estate of Roderick Gay, and the Clemanses as grantees of Roderick Gay, own tracts of land in Land Lot 136, which adjoins Land Lot 133 to the south. When Strain and Burman sought to sell the property, a discrepancy was discovered in the boundary line between Land Lot 136 and Land Lot 133, resulting in a disputed area of approximately 20 acres, on which Roderick Gay and the Clemanses had placed a pond and several buildings.

Strain and Burman presented evidence from a licensed surveyor locating the disputed land lot line, running east and west, as an extension of the boundary of adjoining land lots marked by a concrete monument and forming a common intersection at the corners of four land lots. Gay and the Clemanses presented evidence from another surveyor of a different property line based on a marker placed by a predecessor in title; that line did not coincide with the land lot lines.

The parties agreed to submit the case to a bench trial, and after hearing evidence the trial court found that the boundary line was located as surveyed and testified to by Strain and Burman's surveyor. The trial court found that the deeds in the Gay chain of title "are not documents which would give Defendants 'color of title'" and that Gay and the Clemanses had not acquired the disputed property by prescription. The trial court also ordered Strain and Burman to pay Gay and the Clemanses the fair market value of the improvements on the property after an appraisal, the cost of which would be divided equally between them.

1. In Case No. A03A0596, Gay and the Clemanses complain that the trial court erred in refusing to find adverse possession under color of title.[1] We disagree.

"To acquire title by adverse possession, a claimant must show 'public, continuous, exclusive, uninterrupted, and peaceable' possession of the property for twenty years, or for seven years under color of title." (Footnote omitted.) *Church of the Nativity v. Whitener*, 249 Ga. App. 45, 48 (4) (547 SE2d 587) (2001). See also OCGA § 44-5-164.

Color of title is a writing upon its face professing to pass title, but which does not do it, *either from want of title in the person making it, or from the defective conveyance that is used.* To entitle the possessor to the benefit of his color of title, there must be a writing; it must purport to convey the

---

[1] The undisputed evidence shows that none of the structures placed on the land has been present for 20 years.

property to the possessor and it must contain such a description of the property as to render it capable of identification, and the possessor must in good faith claim the land under it.

(Citation and punctuation omitted; emphasis omitted and supplied.) *Ga. Power Co. v. Irvin*, 267 Ga. 760, 765 (1) (c) (482 SE2d 362) (1997). "[A] deed does not give the holder thereof color of title to property, unless the deed describes the property in such a way that, but for the deed's invalidity, it would operate as a conveyance of title to the property. [Cits.]" *Atlanta Trailer Mart v. Ashmore Foods*, 247 Ga. 254, 255 (1) (275 SE2d 336) (1981). And "color of title will not extend beyond the description contained in the grant. [Cit.]" *Smith v. Lanier*, 199 Ga. 255, 263 (2) (34 SE2d 91) (1945).

Here, there was no defect in the conveyance or in the original title in the Gay or Clemans deeds; rather, the dispute revolves around the location of a boundary line. The deeds offered by Gay and the Clemanses refer either to Land Lot 136 or "all of Land Lot 136" or, in the case of the deeds to Roderick Gay, use as a starting point "the intersections of Land lot Nos. 133, 132, 136 and 137."[2] The location of the boundary of Land Lot 136 was determined by the trial court, and Gay and the Clemanses did not appeal that determination. The deeds upon which they rely grant title only to property located within that boundary line. The trial court therefore correctly held that the deeds do not support a claim of adverse possession under color of title.

2. Gay and the Clemanses also complain of the trial court's refusal to admit defendants' Exhibit 4, a sketch plan or diagram apparently prepared for the Georgia Kraft Company, stamped as "acreage revision" and dated 1973. The document bears no filing stamp or other indication that it is a public document. At trial, Strain objected to its admission on two grounds: that there was no seal or signature on the document identifying it as a survey prepared by a registered land surveyor, and that no agent of Georgia Kraft testified that it was a true and accurate representation of a survey.

The trial court correctly sustained the objection. The exact nature and origin of this document were never established; the surveyor through whom Gay and the Clemanses attempted to introduce it never identified its source or author, although it can be inferred that he obtained it from an unidentified person at Georgia Kraft. Gay and the Clemanses argue that "maps, models and diagrams, shown by the testimony to be correct, are admissible," relying generally on Green, Georgia Law of Evidence, § 83, and specifically on *Metts v.*

---

[2] As Strain and Burman note, the description in these deeds conflicts with the testimony of appellants' surveyor, who testified that no such intersection existed.

*Easters*, 229 Ga. 754, 756-757 (5) (194 SE2d 450) (1972), and *Savannah Ice Delivery Co. v. Ayers*, 127 Ga. App. 560, 561 (2) (194 SE2d 330) (1972). Those decisions are inapposite here, however, because the diagram was never "shown by the testimony to be correct" or even identified as to its source. As Green observes, "It is error for the court to receive [the document], if not shown to be correct. [Cits.]" Green, Georgia Law of Evidence, § 83, p. 186, n. 7. In both *Metts* and *Savannah Ice*, supra, the diagram or sketch in question was prepared by a registered land surveyor, who testified and was subject to cross-examination. Here, in contrast, it was prepared by some unknown person or persons. No witness testified that the document was a business record, OCGA § 24-3-14, or that it was a public record under OCGA §§ 24-7-20 through 24-7-27. Moreover, although the document was not admitted into evidence, Gay and the Clemanses were allowed to show it to both surveyors and examine them regarding it. Under these circumstances, the trial court did not err in refusing to admit the sketch.

3. In Case No. A03A0597, Strain and Burman appeal the trial court's order that they pay to Gay and the Clemanses the fair market value of the improvements made on the disputed property. We find no error in the trial court's decision.

Strain and Burman complain that this portion of the trial court's order unfairly assesses them for improvements of which they had no knowledge and to which they did not consent, citing *Lawson v. O'Kelley*, 81 Ga. App. 883 (60 SE2d 380) (1950). The Supreme Court of Georgia, however, has addressed this issue and distinguished *Lawson* in claims analogous to an action for the recovery of land. *Beavers v. Weatherly*, 250 Ga. 546 (299 SE2d 730) (1983). The Supreme Court acknowledged that *Lawson* applies "[w]here one without knowledge neither authorizes, consents to, nor ratifies another's labor or permanent improvements to property" and imposes no duty to make restitution in the absence of knowledge. Id. at 548 (2).

> However, when one seeks the aid of equity in recovering land, the court may make compensation for improvements a condition of relief. The improver is entitled to the reasonable value of his labor and materials or the amount which his improvements have added to the market value of the land, whichever is smaller. Similarly, where the owner seeks to recover mesne profits or other damages against the improver, the improver is entitled to have the value of improvements deducted from the claim against him. In a situation such as the one before us, in which the defendant is in possession, the action for cancellation of a deed is similar

to an action for the recovery of land within the meaning of OCGA § 44-11-9. Under OCGA § 44-11-9, a defendant who has a bona fide possession of land under an adverse claim of title may set off the value of permanent improvements against mesne profits and recover the excess of the value of the improvements over the profits. Although this action for cancellation of deeds and recovery of mesne rents and profits is not strictly an action for recovery of land covered by OCGA § 44-11-1, the equity rule does not differ essentially from the statutory rule. The statute allows the set-off for improvements only if placed thereon by himself or other bona fide claimants under whom he claims.

(Citations and punctuation omitted.) Id. at 548-549.

The existence of good faith is a question for the trier of fact, *Southern Business Machines &c. v. Norwest Financial Leasing*, 194 Ga. App. 253, 258 (2) (390 SE2d 402) (1990), and a trial court's finding on the issue of good faith will be upheld if there is any evidence to support it. *Holland v. Farmer*, 217 Ga. App. 546, 547 (2) (458 SE2d 175) (1995). The testimony at trial amply supports the trial court's conclusion that the improvements on the land were placed in good faith. Both surveyors agreed that the boundary was not well marked. Wayne Clemans testified that he accompanied the late Roderick Gay when he purchased the property in 1983 and that they "walked the boundaries as we understood the boundaries were and he showed me the corner points because I was considering purchasing a portion of the property also." Gay and Clemans testified that they relied on a concrete monument and other line markers placed by Georgia Kraft to locate the boundary. While he did not have a survey done before he purchased his property, Clemans hired a surveyor's assistant to mark the corners of the land before he began building his cabin. Because the trial court's finding of good faith is supported by the evidence, we affirm.

*Judgments affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JUNE 17, 2003.

*John R. Emmett*, for appellants.
*Larry B. Hill*, for appellees.