## A08A2019. HARVILL v. THE STATE.
### (674 SE2d 659)

ADAMS, Judge.

William Harvill was tried and convicted of making false statements, insurance fraud, and stalking. Harvill thereafter retained new counsel who moved for a new trial. Following a hearing, the court denied the motion. On appeal, Harvill contends that the evidence was insufficient with regard to stalking, that the trial court abused its discretion by failing to appoint counsel or grant retained counsel a continuance, and that his trial counsel was ineffective in three regards.

Construed in favor of the verdict, the evidence shows that the Gaudet family, including then-teenage daughter Angelina ("Angie"), lived next door to Harvill's mother-in-law. Harvill, who was in his sixties at the time, and his wife lived a half mile away. Barbara Gaudet and Harvill's wife were friends and the two families had socialized in each other's homes. The Harvills even had a key to the Gaudet house.

In the fall of 2004, when Angie was 14 or 15 years old, she rode the bus home and regularly arrived about a half hour before her parents. During this time when she was alone, she received several calls from a man who would say "nasty things," including suggesting that she and a friend come over to do sexual favors for him. She told her parents that she thought it sounded like Harvill. The Gaudets contacted the police, and telephone records showed that the calls had been placed from Harvill's home number. The Gaudets chose not to press charges. Detective Curnutte, who investigated this incident, advised Harvill to not have any contact with the Gaudet family.

In the summer of 2005, Harvill left messages on another family's answering machine. In the messages, Harvill stated that Angie and a friend spent time with the family's son and that they had sexually transmitted diseases. Angie's mother listened to the message and identified Harvill as the caller, as did an officer who subsequently became familiar with Harvill's voice. Curnutte investigated this incident as well, and he advised Harvill that his contact with the Gaudet family "needed to stop."

No warrants were issued in connection with either of the above incidents. Testimony about the two events was introduced as prior difficulties between the parties, and the court gave a limiting instruction to that effect.

Next, on October 13, 2005, Harvill approached the manager of the grocery store where Angie worked as a cashier and reported that, on the previous evening, and in response to his complaints about her service at the store, Angie had offered sexual favors and a discount on groceries. The victim was not at work at the time Harvill spoke to the manager, but when she arrived, the manager told her what Harvill had said. Angie began to cry and asked for her mother, who was called and came to the store. Angie denied the allegations and denied having any sexual contact with Harvill or even talking about anything sexual with him.

On October 21, 2005, Harvill reported to police that he discovered damage to the driver's side front bumper of his car in what apparently had been a hit-and-run accident on October 18. He claimed that the collision had occurred at the grocery store, the same one where the victim worked, at a time when he was not in his car. Officer Burns observed damage and red paint residue on the car and took a report.

On October 23, Harvill, who had apparently been arrested in connection with the October 13 incident and the previous harassing phone calls, was released on a conditional bond, in which he agreed to "stay away, absolutely, directly or indirectly, by person and telephone, from the person, home, and job of: Angelina (Angie) Gaudet and Family."

The next day, Harvill called the police to complain that the date and time on the accident report was incorrect; he said the accident actually occurred on October 19. On the 25th, Officer Hale responded to the call and met with Harvill at his home to get additional information about the accident. While there, Hale observed the damage to the car and the red paint, and took photographs. Harvill also told Hale that an anonymous caller told him that he had seen the accident and recorded the license tag number. The officer ran the tag and it turned out to be Angie's car. Hale then contacted the Gaudets, saw the girl's red car, and saw scraping damage on the right rear of the car. Hale testified that the red paint on Harvill's car and the red color of Angie's car appeared "almost alike." Angie was unaware of the damage on her car, and she denied ever having a wreck or hitting Harvill's car.

Within a day or so, Detective Curnutte met with Hale and spoke to him about the car accident case. He did not tell Hale about the 2004 or July 2005 incidents, but, apparently knowing that Hale planned to speak with Harvill again, Curnutte asked Hale to record the conversation and obtain a written statement as well.

Hale returned on the 28th and had a second conversation with Harvill. He secretly recorded the conversation with a wireless microphone that he wore as a motorcycle cop. Hale did not read

Harvill his *Miranda* rights. The tape recording of the conversation was played for the jury. In that conversation, Harvill mentioned that officers had previously talked to him about warrants for his arrest related to allegations of telephone harassment and stalking, which he denied. He then claimed the hit-and-run had occurred either on the 19th or the 15th. He mentioned that his insurance company had pictures. At Hale's request, Harvill also wrote out a statement. In the statement, Harvill related that the anonymous caller also explained that he had contacted the police on the 20th. Harvill filed an insurance claim about the accident on October 28, 2005.

Curnutte checked the recorded historical tapes of calls to the police department and found the described October 20 call. He determined that the call originated from a convenience store pay phone located within walking distance of Harvill's home. And at trial, based on his subsequent knowledge of Harvill's voice from speaking to him during the course of the investigation, Curnutte identified the caller as Harvill.

Harvill was indicted on three counts: Count 1 — making a false statement to police about the anonymous caller; Count 2 — insurance fraud; and Count 3 — aggravated stalking, in which it was alleged that he

> on or about October 25, 2005, did unlawfully and without authority follow and surveil the person of Angelina Gaudet, by going to her work place and after confirming she was at work did make the false claim that she had hit his car in the parking lot and left the scene of the accident, without said victim's consent, and with the intent to harass and intimidate said victim, after having been previously ordered not to have similar contact with said victim pursuant to a conditional bond issued . . . on October 23, 2005. . . .

He was convicted on Counts 1 and 2 and on the lesser included offense of stalking on Count 3.

1. Harvill contends the evidence was insufficient to support the conviction of stalking. He also contends that trial counsel was ineffective for failing to move for a directed verdict on aggravated stalking, for consenting to a charge on stalking, and for failing to request a charge on entrapment.

(a) On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence submitted below and does not weigh the evidence or assess the credibility of the witnesses. *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004).

To sustain a conviction, the evidence must be sufficient to enable a rational trier of fact to find the appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

A person commits the offense of stalking

> when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-90 (a) (1). "[C]ontact" is defined as "*any communication* including *without being limited to* communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device. . . ." (Emphasis supplied.) Id. This definition is broad enough to include intentionally sending a message to another person by telling a third party who would be reasonably expected to convey the message to the victim. The jury was authorized to find that Harvill contacted the store manager and the police, in connection with the alleged hit-and-run, in order to intentionally send a message to Angie. Plus, plenty of evidence was submitted to show that Harvill did so with the intent to harass or intimidate Angie. The evidence was sufficient to support the conviction of stalking.

(b) Harvill contends uncontroverted evidence showed that he could not have been convicted of aggravated stalking as charged in the indictment, and that therefore, trial counsel should have moved for a directed verdict and refused a charge on stalking as a lesser included offense. When considering claims of ineffective assistance of counsel, Georgia appellate courts will uphold a trial court's findings of fact unless they are clearly erroneous but review legal conclusions de novo. *Hunter v. State*, 281 Ga. 526, 528 (2) (a) (640 SE2d 271) (2007); *Cherry v. State*, 283 Ga. App. 700 (1) (642 SE2d 369) (2007).

Because Harvill was not convicted of aggravated stalking, even a denial of a motion for directed verdict would now be moot. See, e.g., *Head v. Walker*, 243 Ga. 108, 110 (252 SE2d 440) (1979). Therefore, Harvill can show no harm in trial counsel's failure to move for a directed verdict. And a trial court is authorized to charge on a lesser included offense on its own volition and in its discretion. *State v. Stonaker*, 236 Ga. 1, 2 (222 SE2d 354) (1976); *Powell v. State*, 270 Ga. 327, 328 (2) (510 SE2d 18) (1998) (not error to charge on included offense and to permit factfinder to return verdict on that included charge). Accordingly, Harvill cannot show ineffective assistance for failure to object to the charge on the lesser included offense.

(c) Harvill's claim that trial counsel was ineffective for failing to

request a charge on entrapment also fails. He claims that there is a reasonable likelihood that he would have been acquitted of making false statements with such a charge because the evidence showed that the officers coerced him into making a statement. Entrapment involves committing a crime as a result of the unlawful solicitation or inducement of a law enforcement officer. See generally *Ellzey v. State*, 272 Ga. App. 253, 256 (1) (612 SE2d 77) (2005). It consists of three elements: "(1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime." (Footnote omitted.) Id. Here, there is no evidence that Hale originated the idea for making a false statement. Accordingly, counsel was not ineffective for failing to request such a charge.

2. Harvill contends the trial court erred by failing to provide him with court appointed counsel and by failing to grant a continuance. When a defendant lacks the financial resources to retain a lawyer for trial, the State is required to provide one. *Garland v. State*, 283 Ga. 201, 202 (657 SE2d 842) (2008); *Gideon v. Wainwright*, 372 U. S. 335 (83 SC 792, 9 LE2d 799) (1963). But Harvill has not cited any evidence to show this court that he lacked the financial resources to retain a lawyer in this case; in fact, he hired one. We find no abuse of discretion.

Second, Harvill asserts that he moved for a continuance to allow newly retained counsel additional time to prepare for trial and that the trial court improperly denied that request. Resolution of this issue turns on whether Harvill was reasonably diligent:

> Whether a particular defendant has exercised "reasonable diligence" in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion.

*Flowers v. State*, 275 Ga. 592, 594 (2) (571 SE2d 381) (2002). Here, Harvill has not cited any evidence to show that he was diligent in attempting to retain counsel, who he hired the week before trial. We find no abuse of discretion.

3. Harvill also contends trial counsel was ineffective in that, on Sixth Amendment grounds, he should have objected to or moved to suppress the tape-recorded statement that Harvill made to Officer Hale on October 28, 2005, as well as the follow-up written statement. He claims that his right to counsel attached by October 23, that the two investigations were interrelated, and that his statement to Hale

YALE LAW LIBRARY

on the 28th was given without any waiver of rights or advice of counsel.

The court found that Hale's noncustodial interview of Harvill and the subsequent written statement only concerned Harvill's claim of damage to his car — a claim that Harvill initiated — and that Hale made that clear to Harvill. The court's finding regarding what was discussed was not clearly erroneous. Hale explained that he was there to discuss the report that Harvill had filed. When Harvill tried to discuss other topics including arrest warrants for harassment and stalking, Hale steered the conversation back to the accident report. Hale continued to try to find out about the details of that incident. Hale emphasized that he was a traffic cop, not a detective. He asked Harvill, "What I care about is the Food Max part because apparently that's where we think it happened, right?" The officer asked questions only about that incident and he took pictures of the car. We find no clear error in the court's finding that Hale's interview concerned only the alleged hit-and-run.

The trial court also found that Harvill was out on bond for the stalking charge at the time of the statement, and that therefore his Sixth Amendment rights had attached with regard to that incident, but only to that incident. As the trial court correctly noted, the United States Supreme Court has held that:

> The Sixth Amendment right to counsel is offense-specific: It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

(Footnote omitted.) *Smith v. State*, 273 Ga. App. 107, 109 (2) (614 SE2d 219) (2005). Therefore, Harvill's oral and written statements about the alleged hit-and-run could not have been barred; adversary judicial proceedings had not begun with regard to the charges of insurance fraud or making false statements. See id. (Sixth Amendment right had not yet attached to crime for which defendant had not been charged). Thus, counsel was not ineffective in this regard.

Harvill contends the result should be different here because Officer Curnutte investigated the two incidents of "prior difficulties" between Harvill and the victim, he was aware of the October 13 incident at the time that he instructed Hale to record his conversation with Harvill, and Hale had already determined that the Gaudets were related to the hit-and-run investigation, all of which indicated that the events were part of a "continuing course of conduct." But there is no exception for crimes that are simply factually related to a

charged offense for which the Sixth Amendment protection has attached. Rather, in order for the Sixth Amendment right to counsel to attach to a second offense, even if not formally charged, that offense must be "considered the same offense under the *Blockburger* test." *Texas v. Cobb*, 532 U. S. 162, 173 (121 SC 1335, 149 LE2d 321) (2001). See *Blockburger v. United States*, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"). The charges against Harvill in this case fall well outside that test. Therefore his recorded and written statements made in the course of investigating the alleged hit-and-run were admissible, and, accordingly, failure to object to the statements did not constitute ineffective assistance of counsel.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 5, 2009.

*Michael J. Moore*, for appellant.

*Kelly R. Burke, District Attorney, Jason E. Ashford, Joshua D. Morrison, Assistant District Attorneys*, for appellee.