## A10A2241. OWEN v. WATTS.

(705 SE2d 852)

JOHNSON, Judge.

Kathy Watts sought a stalking protective order against Christine Owen on the ground that Owen falsely reported hazardous conditions affecting minor children in Watts' home to the Rabun County Sheriff's Office and the Department of Family and Children Services ("DFCS"), and had closely observed Watts and her family's private lives for years. Following an evidentiary hearing, the trial court issued a stalking protective order enjoining Owen from electronically or otherwise surveilling, investigating, or interfering with Watts. On appeal, Owen contends that her report of child abuse was immune from civil or criminal liability, that the preponderance of the evidence did not establish the elements of stalking as required for the trial court to issue the protective order, and that the trial court erred in finding that her internet research constituted stalking. For the reasons that follow, we disagree and affirm.[1]

In order to obtain a stalking protective order, Watts was required to establish the elements of the offense of stalking by a preponder-

---

[1] Watts' motion to sanction Owen for filing a frivolous appeal and violating the rules of this Court is denied. Owen's motion for sanctions is also denied.

ance of the evidence.[2] "The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion."[3]

Viewed in a light most favorable to the trial court's findings,[4] the evidence showed that Watts and Owen filed competing petitions to adopt Watts' grandchild, M. F. L., who had previously been placed in Owen's home as a foster child.[5] Gerald Johnson, the chief investigator with the Rabun County Sheriff's Office, testified that in April 2010 he received a complaint from Owen that alleged the deprivation, neglect, and possible abuse of two minor children living in Watts' home. M. F. L. and her brother were living with Watts at that time. Johnson investigated and found nothing to substantiate Owen's allegations. Owen later telephoned Johnson and indicated that the children's mother, who was under "some type of safety plan" not to contact the children, "had gone out a window." Johnson followed up on the conversation, determined that Watts was the guardian of her grandchildren, and decided that no further investigation was warranted.

On April 9, 2010, Amy Galbraith, an investigator with DFCS, received a telephone call from 911 advising her that a person had called requesting a "welfare check" on M. F. L. at Watts' home. The person who called 911 was aware that Johnson and another DFCS worker had been to Watts' home earlier that day. The basis for the referral was the caller's claim that Watts was not protecting the children from their uncle and biological mother. Galbraith drove with Johnson to Watts' residence. She found no trace of the mother or the uncle at Watts' home.

Also on April 9, 2010, Deputy Matt Roberts received information from his dispatch that "a ten-year-old girl . . . was attempting to sneak out the back window of the residence." Roberts went to Watts' house, spoke with Watts and M. F. L., who said everything was fine, and he ended the investigation.

Watts testified that she was the temporary guardian of M. F. L. and the adopted mother of M. F. L.'s brother. According to Watts, law enforcement and DFCS began investigating her after her daughter and son "put her address down to be paroled from prison," but they were not living at her home. She claimed that Owen's calls caused

---

[2] *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007). See OCGA §§ 16-5-90 (a); 16-5-94 (a).

[3] (Citations and punctuation omitted.) Id.

[4] See *De Louis v. Sheppard*, 277 Ga. App. 768, 769 (627 SE2d 846) (2006).

[5] In *Owen v. Watts*, 303 Ga. App. 867 (695 SE2d 62) (2010), we affirmed the trial court's order denying Owen's petition to adopt M. F. L. In *Owen v. Watts*, 296 Ga. App. 449 (674 SE2d 665) (2009), we reversed the trial court's order granting Watts' petition to adopt M. F. L.

DFCS and police to open investigations, and as a result M. F. L. feared "someone would come get her" if she went outside by herself. On cross-examination, Watts further testified that she feared for her physical safety because of Owen.

During Owen's cross-examination of Watts the proceedings evolved into a series of discussions between the trial court and Owen, who was representing herself pro se. Owen was concerned that M. F. L.'s uncle and biological mother were in Watts' home in violation of a no contact order that had been issued in a previous case. She believed the uncle was living in Watts' home because of information she obtained by researching the parolee database. She admitted contacting law enforcement with her concerns, although she denied contacting DFCS.

Owen argued to the trial court that because she had conducted internet research and had "monitored from the comfort of my home," she could not have placed Watts under surveillance. Owen admitted that people in the community were reporting to her about activities at Watts' home. She further contended that she wanted to ask Watts about her daughter's internet activity, after which the following exchange occurred:

> The Court: Why are you monitoring this family?
> Owen: I'm not, your Honor.
> The Court: How do you know about her daughter's internet activity?
> Owen: Because other people report it to me.

1. Owen claims that the trial court abused its discretion in granting the stalking protective order because her actions in reporting child abuse were immune from civil or criminal liability under OCGA § 19-7-5. Owen correctly shows that in addition to the mandatory reporters listed in OCGA § 19-7-5 (c), "[a]ny other person . . . who has reasonable cause to believe that a child is abused may report or cause reports to be made as provided in this Code section."[6] Further, any person making a child abuse report to a child welfare agency or appropriate police authority pursuant to OCGA § 19-7-5, whether required by OCGA § 19-7-5 or not, "shall in so doing be immune from any civil or criminal liability that might otherwise be incurred or imposed, provided such participation pursuant to this Code section or any other law is made in good faith."[7] And as specifically applicable here, "harassing and intimidating" conduct

---

[6] OCGA § 19-7-5 (d).
[7] OCGA § 19-7-5 (f).

for the purposes of the offense of stalking must "serve[ ] no legitimate purpose."[8] Given the policy of the state as expressed by the legislature in OCGA § 19-7-5, we find that the assertion of a good faith claim of child abuse serves a legitimate purpose.

We disagree with Owen, however, that the trial court was required to find any of her conduct protected under OCGA § 19-7-5. "The Supreme Court of Georgia has held that immunity under OCGA § 19-7-5 (f) should be granted to a person making a report with either the 'reasonable cause' specified in subsections (c) and (d) or the 'good faith' specified in subsection (f)."[9] The evidence does not show that Owen received any information that M. F. L. had been subjected to "physical injury or death," "neglect or exploitation," "sexual abuse," or "sexual exploitation," which constitute child abuse for purposes of OCGA § 19-7-5 (b) (3). At best, when Owen contacted law enforcement she had reason to suspect that M. F. L.'s uncle and biological mother were in violation of a court order limiting contact with the child. Although the order was not formally tendered into evidence, it was reviewed by the trial court and discussed at length by the parties.[10] Owen represented that she had tried to enforce the no contact order through contempt proceedings but that the court had refused to hear the matter. There was no evidence that M. F. L.'s mother, uncle, or her brother, who was also subject to the order, were a danger to the child. The trial court was authorized to conclude that Owen did not have reasonable cause to believe M. F. L. was the victim of child abuse.

Notwithstanding the lack of an objective reason for suspecting child abuse, "[a] reporter acting in good faith will be immune even if she is negligent or exercises bad judgment."[11] Good faith "is a subjective standard: a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation."[12] Although Owen maintained she acted to protect M. F. L., Watts and Owen were longstanding adversaries in their respective petitions to adopt the child. And in assessing Owen's motivations, the trial court was entitled to consider Owen's extensive surveillance of Watts and her family and Owen's credibility.[13] Accordingly, the trial court was

---

[8] OCGA § 16-5-90 (a) (1).

[9] (Citation and punctuation omitted.) *Brown v. Rader*, 299 Ga. App. 606, 610 (1) (c) (683 SE2d 16) (2009).

[10] It was also not clear that the order at issue was still in effect.

[11] *O'Heron v. Blaney*, 276 Ga. 871, 873-874 (1) (583 SE2d 834) (2003).

[12] (Punctuation and footnote omitted.) Id. at 873 (1).

[13] See generally *Gay v. Strain*, 261 Ga. App. 708, 712 (3) (583 SE2d 529) (2003) ("[t]he existence of good faith is a question for the trier of fact").

authorized to find by a preponderance of the evidence that Owen did not act with a legitimate purpose in reporting child abuse to the police and that her conduct was not immunized because it was not taken in good faith.

2. Owen claims that the trial court abused its discretion in issuing the protective order because the preponderance of the evidence was insufficient to establish the elements of stalking.[14] We disagree.

"A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[15] "Harassing and intimidating" is

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.[16]

In this case, evidence showed that Owen placed Watts and her family under extensive surveillance through a combination of internet searches and third-party observations of Watts' home.[17] She then contacted law enforcement on at least two occasions and caused officers to subject M. F. L. and Watts' family to groundless investigation.[18]

Owen argues that her act of filing a child abuse report could not have placed Watts in reasonable fear for her safety.[19] But Watts did

---

[14] Owen presents this argument in two separate claims of error. In a third claim of error she asserts that the trial court misconstrued OCGA § 16-5-90 (a) (1) by considering the statute's definition of "harassing and intimidating" in the absence of a preponderance of the evidence to show that she followed, placed under surveillance, or contacted Watts. The evidence did show that Owen placed Watts under surveillance, and we disagree with Owen that the trial court either misapplied or misconstrued OCGA § 16-5-90 (a) (1).

[15] OCGA § 16-5-90 (a) (1).

[16] Id.

[17] See *Quinby v. Rausch*, 300 Ga. App. 424, 426 (685 SE2d 395) (2009) (evidence of stalking included that petitioner's ex-wife hired a private investigator to follow him).

[18] See generally *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005) ("[T]wo related instances of stalking behavior . . . occurring within the space of a single week . . . evinced a pattern of prohibited behavior criminalized by the [stalking] statutes."); *Harvill v. State*, 296 Ga. App. 453, 456 (1) (a) (674 SE2d 659) (2009) (report to police by defendant of an alleged hit-and-run accident was sufficient to show an intent to convey a message to victim with the intent to harass).

[19] See *Pilcher*, supra, 282 Ga. at 167 (verbal taunts, which occurred at various times during working hours, were not sufficient to create a reasonable fear for the safety of appellees

not just file reports, and stalking does not require "an overt threat of death or bodily injury."[20] The evidence showed that Owen's surveillance of Watts and her family was so extensive that she knew about, among other things,[21] Watts' daughter's internet activities, and she purported to know that someone crawled out of a window at Watts' residence.[22] Watts testified that Owen caused her to fear for her safety.[23] Although Owen's actions were more surreptitious than confrontational, they could also be fairly described as obsessive and intrusive even of Watts' residence, and Owen would not promise to stop even at the urging of the trial court.[24] Under the circumstances, the trial court was not required to conclude that Watts' fears were unreasonable. "[I]t is not this Court's function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments."[25]

In view of the foregoing, the preponderance of the evidence was sufficient to establish that Owen committed the offense of stalking, and the trial court did not abuse its discretion in entering the protective order.

3. Lastly, Owen argues that the trial court erred in ruling that her computer research on the internet constituted stalking. We disagree with Owen that the trial court made such a ruling. At the hearing, Owen argued that her behavior could not constitute stalking because "everything I've done has been from the privacy of my own home, including drafting letters and Internet research." The trial court disagreed, pointing out that "part of the statute . . . contemplates computers." The trial court did not rule that internet research, in and of itself, and irrespective of the other elements required to establish the crime, constituted misdemeanor stalking. We find no error.

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

---

or their families).

   [20] OCGA § 16-5-90 (a) (1).

   [21] An observer had also reported to Owen that Watts' daughter had been served with process at Watts' home.

   [22] See *Placanica v. State*, 303 Ga. App. 302, 304 (693 SE2d 571) (2010) ("A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking").

   [23] Compare *Sinclair v. Daly*, 295 Ga. App. 613, 615 (672 SE2d 672) (2009) (petitioner did not testify that defendant's actions caused him to fear for his safety).

   [24] See, e.g., *Hennessey v. State*, 282 Ga. App. 857, 860 (640 SE2d 362) (2006) (evidence authorized jury's verdict for stalking where defendant's comments were not overtly threatening but his actions were "persistent, disturbing . . . and [he refused] to leave the victim alone").

   [25] *Rawcliffe v. Rawcliffe*, 283 Ga. App. 264, 265 (1) (641 SE2d 255) (2007).

DECIDED DECEMBER 17, 2010.

Christine Owen, *pro se*.
*Merlinus G. Monroe*, for appellee.