**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A1967. BRUNO v. LIGHT.

BARNES, Presiding Judge.

Kurtis Bruno appeals from the denial of a motion to set aside, in which motion he challenged the propriety of two stalking protective orders procured against him by his residential neighbor, Darla Light. For reasons explained below, we affirm in part, reverse in part, and remand the case for proceedings not inconsistent with this opinion.

Pursuant to OCGA § 16-5-94, Light filed on January 29, 2016 a petition in Forsyth County Superior Court accusing Bruno of engaging in stalking behavior against her and her family. Such conduct, Light alleged in a sworn statement, included incidents during which Bruno, while either on his property or on her and her family's property, had yelled obscenities to her and her family members, made escalating threats to them, blocked their driveway, and shone a light into their house at night. After conducting a hearing thereon, the superior court entered a "Stalking

Twelve Month Protective Order." In relevant part, it provided, "[Bruno] is enjoined and restrained from approaching within one mile of [Light] and/or [her] immediate family, and/or residence, place of employment, or school. . . . This Order expires on February 10, 2017.

The following year, on Friday, February 10, 2017, Light filed a "Motion to Extend Twelve Month Protective Order." In that verified pleading, Light claimed that she had not yet benefitted from the ordered restraint because during the intervening twelve month period, Bruno was held without bond pending an anticipated trial. Maintaining that Bruno had displayed a history of violence, asserting that he could be released soon after his trial, and claiming that she feared that Bruno would harm her and/or her family, Light requested: "(a) that a hearing on this Motion be held at the earliest opportunity; (b) that this [c]ourt grant this Motion and Extend the Protective Order; and (c) that this [c]ourt grant the Movant such other and further relief as it deems equitable and just."

The following Monday, on February 13, 2017, a rule nisi was entered scheduling for February 22, 2017 a hearing on Light's "Motion to Extend Twelve Month Protective Order." Also on February 13, 2017, the court entered one of the two orders at issue in this appeal: "Order Extending Twelve Month Protective Order,"

wherein the superior court stated that "the Twelve Month Protective Order issued February 10, 2016, is extended through February 22, 2017."

On February 22, 2017, the superior court entered the second of the two orders at issue in this appeal: "Stalking Three Year/Permanent Protective Order." In pertinent part, that order set out:

> A civil hearing was held on this matter on February 22, 2017, at which [Bruno] appeared and/or was provided with the opportunity to be heard and [Light] requested, pursuant to OCGA §§ 16-5-94 (e) and 19-13-4 (c), that a permanent Protective Order be issued. Having heard the evidence presented, reviewed the petition and the record concerning this cause and for good cause shown, IT IS HEREBY ORDERED AND ADJUDGED: [Bruno] has knowingly and willfully violated OCGA §§ 16-5-90 et seq. and placed [Light] in reasonable fear for [her] safety, because [of] stalking, harassment. . . .
>
> [Bruno] is . . . enjoined and restrained from approaching within *one mile* . . . of [Light] and/or [Light's] immediate family, and/or residence, place of employment, or school or subsequent residence, place of employment or school. *This restriction includes his own property*.[1] . . . This Order shall be in effect for three (3) years. . . .

---

[1] Emphasis supplied to indicate the language handwritten by the judge upon the otherwise pre-typed form-order.

3

Bruno filed no notice of appeal from that order.[2] More than 30 days from its entry, however, Bruno filed a motion to set aside,[3] taking issue with the Order Extending Twelve Month Protective Order ("Extension Order") and the Stalking Three Year/Permanent Protective Order" ("3-Year Protective Order"). The superior court denied that motion, and Bruno procured the instant discretionary appeal.[4]

1. Bruno challenges the 3-Year Protective Order on two grounds.

(a) As an initial matter, before addressing Bruno's specific arguments, we review the governing principles and framework.

"[T]o obtain a protective order based on stalking, the petitioner must establish the elements of the offense by a preponderance of the evidence. The grant or denial

---

[2] The protective order did not arise out of a domestic relations matter that would subject it to the discretionary appeal procedures in OCGA § 5-6-35 (a) (2). And we have consistently treated stalking protective orders as directly appealable. See, e. g., *Thornton v. Hemphill*, 300 Ga. App. 647 (686 SE2d 263) (2009); *Rawcliffe v. Rawcliffe*, 283 Ga. App. 264 (641 SE2d 255) (2007); *McKlin v. Ivory*, 266 Ga. App. 298 (596 SE2d 673) (2004); *Johnson v. Smith*, 260 Ga. App. 722 (580 SE2d 674) (2003).

[3] See *Abushmais v. Erby*, 282 Ga. 619, 621 (2) (652 SE2d 549) (2007) ("OCGA § 9-11-60 provides the sole means of attacking a judgment.") (citation and punctuation omitted).

[4] See OCGA § 5-6-35 (a) (8) (providing that an appeal from the denial of a motion to set aside a judgment is by the grant of a discretionary application).

4

of a motion for protective order generally lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion." (Citations and punctuation omitted.) *Pilcher v. Stribling*, 282 Ga. 166, 167 (647 SE2d 8) (2007).

Pursuant to OCGA § 16-5-94 (a), "[a] person . . . who alleges stalking by another person may seek a restraining order by filing a petition alleging conduct constituting stalking as defined in Code Section 16-5-90." As provided by OCGA § 16-5-90 (a) (1),

> A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "contact" shall mean any communication[.] . . . [T]he term "place or places" shall include any public or private property occupied by the victim *other than the residence of the defendant*. . . . The term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

(Emphasis supplied.)

5

(b) Citing the language italicized above, Bruno attacks the 3-Year Protective Order as restraining him from certain conduct that does *not* constitute stalking under OCGA § 16-5-90 (a) (1), apparently because he engaged in such conduct while on his own residential property. Pretermitting whether any such argument falls within the purview of OCGA § 9-11-60 (d),[5] we find the argument unavailing because, by its plain language, OCGA § 16-5-90 (a) (1) excludes the defendant's residence from the definition of "place of places" only when it is occupied by the victim. See *De Louis v. Sheppard*, 277 Ga. App. 768, 770-771 (1) (627 SE2d 846) (2006) (rejecting appellant's claim that the evidence failed to support the stalking protective order against him for reason that the complained-of behavior occurred at his own residence, explaining that under OCGA § 16-5-90 (a) (1), "the relevant inquiry is whether the *victim* was at [appellant's] residence, which she was not"); *Owen v. Watts*, 307 Ga. App. 493, 498 (3) (705 SE2d 852) (2010) (rejecting appellant's claim that her behavior could not constitute stalking because "everything I've done has been from the privacy of my own home"). This contention, therefore, provides no basis to disturb the denial of Bruno's motion to set aside; such ruling is accordingly affirmed in part.

---

[5] See n. 3, supra.

(c) Bruno contends that the superior court's restriction imposed in the 3-Year Protective Order – banning him from his own residence – is over-broad. We agree.

When ruling on petitions sought under OCGA § 16-5-94, the superior court is vested with discretion in each case to "fashion appropriate relief from conduct designated as stalking." *Reynolds v. Kresge*, 269 Ga. App. 767, 769 (605 SE2d 379) (2004). However, "[t]he relief a court may grant pursuant to this Code section is set forth in OCGA § 16-5-94 (d)."[6] *Rawcliff v. Rawcliff*, 283 Ga. App. 264, 265 (2) (641 SE2d 255) (2007). "The question therefore is whether the court's power in subsection (d) . . . to prohibit a party from 'harassing or interfering' with the other party authorized a prohibition against [residing in one's own home]." *Collins v. Bazan*, 256 Ga. App. 164, 165 (2) (568 SE2d 72) (2002). We hold that it does not.

In *Johnson v. State*, 264 Ga. 590 (449 SE2d 94) (1994), the Supreme Court of Georgia reiterated that "[a] statute is unconstitutionally over-broad if it reaches a substantial amount of constitutionally protected conduct." Id. at 591 (1). In construing

---

[6] OCGA § 16-5-94 (d) provides: "The court may grant a protective order or approve a consent agreement to bring about a cessation of conduct constituting stalking. Orders or agreements may: (1) Direct a party to refrain from such conduct; (2) Order a party to refrain from harassing or interfering with the other; (3) Award costs and attorney's fees to either party; and (4) Order either or all parties to receive appropriate psychiatric or psychological services as a further measure to prevent the recurrence of stalking."

7

OCGA § 16-5-90 and 16-5-91 so as to find them constitutional, the *Johnson* Court rejected the argument that the stalking statutes proscribed "many examples of conduct which society considers to be normal everyday living in constitutionally protected areas." *Johnson*, 264 Ga. at 591 (1). As the *Johnson* Court held, "to the extent that the challenged statutes do proscribe communicative conduct, their restriction is *clearly limited* to a 'knowing and willful' course of harassment and intimidation, which is *not* [expressive conduct that is constitutionally protected]." (Emphasis supplied.) Id. at 592 (1). The stalking statutes are likewise legislatively circumscribed. OCGA § 16-5-92 states: "The provisions of Code Sections 16-5-90 and 16-5-91 shall not apply to person *engaged in activities protected by the Constitution of the United States or of this state* or to persons or employees of such persons lawfully engaged in bona fide business activities or lawfully engaged in the practice of a profession." (Emphasis supplied.)

As this Court has reasoned, "Georgia's stalking laws were drafted to protect people not places. . . . Although the [3-Year Protective] [O]rder may have incidentally kept [Bruno] from face-to-face contact with [Light] while she was at home, . . . significantly, [Bruno] would violate the order even if he went to [his residence] when

8

[Light] was not [at hers]." *Keaton v. State*, 311 Ga. App. 14, 17 (1) (714 SE2d 693) (2011).

Given the foregoing, we conclude that the superior court exceeded its authority in banning Bruno from his residence for three years.[7] See *Rawcliff v. Rawcliffe*, 283 Ga. App. 264, 265-266 (2) (641 SE2d 255) (2007) ("Because the [trial] court was not specifically authorized [by OCGA § 16-5-94 (d)] to prohibit [appellant] from owning or possessing a firearm, that portion of the protective order is . . . vacated."); *Collins*, 256 Ga. App. at 165 (2) (reversing portion of the order that restrained appellant from behavior of "publishing or discussing [petitioner's medical] condition with others,"

_____

[7] We recognize that the Supreme Court has exclusive jurisdiction over "all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question." Ga. Const. of 1983, Art. VI, Sec. VI, Para. II (1); see *Atlanta Independent School System v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996). While this contention by Bruno may challenge the constitutionality of the superior court's order, this contention does not challenge the constitutionality of a law, ordinance, or constitutional provision. We thus conclude that appellate jurisdiction is proper in this Court. See generally id. (explaining that, under [current] 1983 Ga. Const., Art. VI, Sec. VI, Par. II (1), "[u]nless the issue raised on appeal relates either to the constitutional construction or to the constitutionality of a law, ordinance or constitutional provision, jurisdiction is in the Court of Appeals"). Accord *Mayor &c. of Athens v. Gamma Delta Chapter House Corp.*, 208 Ga. 392, 392 (67 SE2d 111) (1951) (explaining that Court of Appeals has jurisdiction over action alleging a taking and injuring of private property, and that the mere fact that the Georgia Constitution forbids such an injury to or the taking of private property without just and adequate compensation "being first paid therefor in nowise makes a constitutional question for decision by [the Supreme Court of Georgia]").

where the prohibition fell outside the scope of OCGA § 16-5-94 (d) because it banned behavior that did not constitute stalking). Accord *Pilcher*, 282 Ga. at 166-168 (reversing restraining order granted against the fire chief to fire department employees, where the fire chief's conduct – verbal abuse in the workplace, as well as physical assaults occurring primarily during basketball games conducted as part of their required physical training – did not fall within statutory definition of stalking). To the extent the 3-year Protective Order ousted Bruno from his residence, the superior court should have granted the motion to set aside that order.[8] Accordingly, we reverse in part the denial of Bruno's motion to set aside.

"Under the stalking statutes, harassment and intimidation refer to *conduct* that at a minimum places the victim in reasonable fear for her safety or the safety of her immediately family." (Emphasis supplied.) *Collins*, 256 Ga. App. at 166 (2). This case is remanded to allow the superior court opportunity to "fashion appropriate relief from conduct designated as stalking." *Reynolds*, 269 Ga. App. at 769. See generally

---

[8] See OCGA § 9-11-60 (d) (3) (providing in pertinent part that "[a] motion to set aside may be brought to set aside a judgment based upon . . . [a] nonamendable defect which appears upon the face of the record or pleadings"). Although when pursuing his motion to vacate, Bruno did not explicitly cite OCGA § 9-11-60 (d) (3) nor use the term "nonamendable defect," he sufficiently raised the key issues before the superior court. See *Hiner Transport. v. Jeter*, 293 Ga. App. 704, 706 (667 SE2d 919) (2008).

*Johnson*, 264 Ga. at 592 (2) ("The [stalking] statutes are not unconstitutionally over-broad, since they do not reach a substantial amount of constitutionally protected conduct.") (citation and punctuation omitted).

2. In several claims of error, Bruno challenges the Extension Order.

(a) Bruno asserts that Light's underlying motion, filed on February 10, 2017, was untimely, because the initial 12-month protective order expired that same day. Bruno has supported this assertion with no legal authority, and we find it unavailing. See generally *Parsons v. Capital Alliance Fin.*, 325 Ga. App. 884, 887 (3) (756 SE2d 14) (2014) (explaining that pleading was timely filed when filed on the day of the deadline); *Magnum Communications v. Samoluk*, 275 Ga. App. 177, 179 (620 SE2d 439) (2005) ("A party may file a motion . . . , but it is the trial court that decides *when* it will rule on the motion.") (emphasis supplied).

(b) Bruno argues that, because he was given neither notice nor a hearing before the superior court entered the Extension Order, the order violated both OCGA § 19-13-4 (c)[9] and Uniform Superior Court Rule ("USCR") 6.2. We disagree.

[9] "Any order granted under this Code section shall remain in effect for up to one year; provided, however, that upon the motion of a petitioner *and* notice to the respondent *and* after a hearing, the court in its discretion may convert a temporary order granted under this Code section to an order effective for not more than three years or to a permanent order." (emphasis supplied). See generally OCGA § 16-5-94

(i) OCGA § 16-5-94 (c) authorized the superior court to "order such temporary relief ex parte as it deems necessary to protect the petitioner or a minor of the household from stalking." Furthermore, it is undisputed that the superior court conducted a hearing on Light's motion filed on February 10, 2017 – at which hearing Bruno appeared and/or was provided with the opportunity to be heard – *before* the superior court entered the 3-Year Protective Order. Thus, Bruno cannot show any harm resulting from the (ex parte) Extension Order.

(ii) Finally, nothing in USCR 6.2 provides for an outcome in Bruno's favor.[10]

For the foregoing reasons, Bruno's challenges to the Extension Order provide no basis to disturb the denial of his motion to set aside. The denial of his motion is thus affirmed in part.

*Judgment affirmed in part and reversed in part, and case remanded with direction. McMillian and Mercier, JJ., concur.*

---

(e) ("The provisions of . . . subsections (b), (c), and (d) of Code Section 19-13-4 . . . shall apply to petitions filed pursuant to this Code section.").

[10] USCR 6.2 provides, "*Unless otherwise ordered by the judge or as provided by law*, each party opposing a motion shall serve and file a response, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion. . . ." (Emphasis supplied).

12