[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11323
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00830-HLM

LUCAS ENTERTAINMENT GROUP, LLC,
d.b.a. Live 360 Group,

　　　　　　　　　　　　　　　　　　Plaintiff-Appellant,

versus

THE ROBERT W. WOODRUFF ARTS CENTER, INC.,
d.b.a. Atlanta Symphony Orchestra,
STANLEY E. ROMANSTEIN,
PHD,
CLAY SCHELL,
DON FOX,

　　　　　　　　　　　　　　　　　　Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 1, 2017)

Before ED CARNES, Chief Judge, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lucas Entertainment Group, LLC, the successor to Live 360 Group, LLC, brought this diversity case against The Robert W. Woodruff Arts Center, Inc., doing business through its division, Atlanta Symphony Orchestra (ASO), and various ASO officers.  For the simplicity's sake we refer to the plaintiffs as Live 360.  The complaint alleged claims for breach of contract, quantum meruit, and common law fraud.  The district court granted ASO's motion for summary judgment on all but two of the breach of contract claims, and Live 360 appealed.

I.

Live 360 is in the business of finding and negotiating with artists on behalf of organizations that own concert venues.[1]  Dave Lucas is its sole member and handled the ASO contracts at issue in this case.  ASO is one division of the Robert W. Woodruff Arts Center, a nonprofit company incorporated in Georgia, and ASO Presents is ASO's concert promotion division.  ASO Presents plans and promotes concerts at three ASO venues in the Atlanta area:  Verizon Wireless Amphitheatre

---

[1] We take these facts from the Defendants' Statement of Material Fact that ASO submitted with its motion for partial summary judgment and the district court deemed admitted under Local Rule 50.1(b).  Live 360 did not contest those facts below or in its briefs, and as a result, it has abandoned any argument against admitting them.  See AT&T Broadband v. Tech Commc'ns Inc., 381 F.3d 1309, 1320 n.14 (11th Cir. 2004) ("Issues not raised on appeal are considered abandoned.").

2

at Encore Park, Chastain Amphitheatre, and Atlanta Symphony Hall.  The co-defendants — Stanley Romanstein, Don Fox, and Clay Schell — are current and former ASO officers.  We refer to ASO and those three officers collectively as ASO.

In 2007 Live 360 entered into a consulting agreement with ASO, in which it agreed to advise and assist ASO in finding artists to perform concerts at the Verizon and Chastain venues.[2]  The agreement listed services that Live 360 was expected to perform, including "introductions to artist management," "evaluation of artist costs," and "negotiation for artist availability."  In exchange for those services, ASO agreed to pay Live 360 a fixed annual fee and additional fees set according to a bonus structure outlined in the agreement.

The agreement specified that Live 360 was to provide three "years of services" for concerts at Verizon (2008–2010) and four "years of services" for concerts at Chastain (2007–2010).  The typical season at Verizon runs from April to October, and the typical season at Chastain runs from June to September.  ASO usually finished booking artists for a given season in the summer, and once all concerts for the current season were booked, Live 360 would begin looking for artists to perform the following season.  In 2010 the parties chose to extend the

---

[2] In 2010 Lucas Entertainment assumed Live 360's obligations under the consulting agreement.

3

agreement through 2012.

Live 360 sought another extension to the agreement in 2012, and Lucas asked ASO officers about it on four occasions. First, in a January meeting with Schell and another officer, Lucas said that he wanted an extension before the start of the 2012 season. He claims that Schell responded, "Yes, that's our goal. That's what we're going to do." Later that spring in a second conversation between Lucas and Schell, Schell asked Lucas for a reduction in the amount paid to the Eagles for their upcoming concert. Lucas said that he wanted an extension before the season started. He claims that Schell again responded, "We'll see. Let's see if — if you get a reduction, fine." During the Eagles concert, Lucas spoke with Fox about an extension, and Fox said, "I'll check into it." Finally, in a third conversation between Lucas and Schell in August, Schell said, "Okay, I'll talk to [Fox]."

In August 2012 Fox decided not to renew the agreement, and he sent Lucas a letter releasing Live 360 from its remaining obligations. He also included a check for $600,000 to satisfy the remaining base fees. Because the last show of the 2012 season at Verizon was confirmed on May 31, 2012, and the last show at Chastain was confirmed on June 14, 2012, Lucas had already begun reaching out to artists for the 2013 season when he received Fox's letter.

In addition to booking concerts at Verizon and Chastain, from 2009 to 2012 Live 360 helped ASO secure five or six artists to perform at Atlanta Symphony

Hall.  Lucas claims that in the January 2012 meeting with Schell and another officer, he told the two men that Live 360 needed to be compensated for those shows as well.  Live 360 never submitted an invoice to ASO for compensation because, as Lucas admits, "we hadn't agreed on them."  Lucas never discussed a specific price with any of the ASO officers, but during his deposition, he stated that he believed $5,000 per show was "fair" compensation.

Live 360 filed this lawsuit, alleging multiple claims for breach of contract, quantum meruit, and common law fraud.  ASO moved for partial summary judgment on the fraud and quantum meruit claims and some of the breach of contract claims, and the district court granted that motion.  Live 360 moved to dismiss the remaining claims without prejudice, and after that motion was granted, filed a notice of appeal regarding the partial summary judgment order.  This Court dismissed that appeal for lack of appellate jurisdiction, finding Live 360 impermissibly appealed from a non-final order.  Live 360 then moved the district court to reinstate the dismissed claims and certify its summary judgment order under Federal Rule of Civil Procedure 54(b).  The district court granted that motion, retroactively certified its order as a final judgment, and entered a separate judgment.  We find that the district court properly certified the appeal under Rule 54(b) and that we have jurisdiction under 28 U.S.C. § 1291.[3]

---

[3] In a previous appeal, we asked the parties to amend their pleadings or supplement the

II.

Live 360 appeals the district court's order and contends that the court erred by granting summary judgment in ASO's favor on its claims for quantum meruit and common law fraud.[4]  We review de novo a grant of summary judgment.  See Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007).  "Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Johnson v. Bd. of Regents, 263 F.3d 1234, 1242 (11th Cir. 2001).  In determining whether the evidence creates a factual dispute, we draw all reasonable inferences in the light most favorable to the nonmoving party.  See id. at 1242–43.  The moving party bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Once it has met its burden, the burden shifts to the nonmoving party, who "must do more than simply show there is some metaphysical doubt as to the material facts."

---

record to establish the district court's diversity jurisdiction over this matter in the first instance. We have since granted Live 360's motion for leave to amend the pleadings to include the allegation that Dave Lucas — the sole member of Lucas Entertainment Group, LLC — is a citizen of Indiana and each defendant is a citizen of Georgia.  As a result diversity jurisdiction is proper.  See 28 U.S.C. § 1332(a).

[4] The district court also granted summary judgment against Live 360 on its breach of contract claims.  In its briefs Live 360 either does not discuss those claims or mentions them only in passing in support of its claims for quantum meruit.  As a result, those claims are abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

A.

Live 360 argues that the district court erred in granting summary judgment on its claims for quantum meruit for the work it did on (1) concerts performed during the 2013 season at Verizon and Chastain and (2) concerts performed at Atlanta Symphony Hall.

"The theory of quantum meruit is an equitable principle based upon the premise that, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 385 (Ga. 2013) (quotation marks omitted); see Ga. Code Ann. § 9–2–7. But where an express contract covers compensation claimed under quantum meruit, the contract governs, Williams v. City of Atlanta, 640 S.E.2d 35, 36 (Ga. 2007), and a plaintiff can only recover if it shows that the services rendered are "extra work" not contemplated by the contract, see Gerdes v. Russell Rowe Commc'ns Inc., 502 S.E.2d 352, 356 (Ga. Ct. App. 1998) ("The reasonable value of extra work performed . . . can be recovered in quantum meruit."). Live 360 contends that the terms of the agreement cover neither the 2013 bookings nor the bookings for the Atlanta Symphony Hall, and therefore both qualify as "extra work" for which

Live 360 should be compensated.

Live 360 argues that the work done on the 2013 bookings is "extra work" because the agreement — which extended through the end of 2012 — does not cover work related to concerts performed during the 2013 season. But nowhere does the contract state that its terms are limited by concert seasons. The agreement refers to "years of services" for each venue, which suggests that it covers all services rendered in a given year regardless of when the concerts take place. Likewise, the 2011 extension covered services rendered through December 31, 2012, not through the end of the 2012 season.[5] And Live 360's practice was to begin working on concerts for the next season in the summer after the current season was finalized.

In line with that practice, it worked on the 2013 season at Verizon and Chastain until it received Fox's letter terminating the agreement in August 2012. Because it performed those services in 2012, they are covered by the agreement and Live 360 cannot recover for them in quantum meruit. See Williams, 640 S.E.2d at 36. Live 360 has not shown that a genuine issue exists regarding whether

---

[5] Live 360 also asserts that ASO bears the burden of showing where in the agreement the parties discuss the bookings. ASO points to the 2011 extension, which states that it was paying Live 360 for services rendered through December 31, 2012, and points to Live 360's practice of working on the next season's concerts as soon as the current season was finalized. The burden shifted to Live 360 to point to some evidence creating an issue of fact. See Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356.

the agreement covers the 2013 bookings for concerts at Verizon and Chastain.[6]

For that reason, summary judgment was appropriate as to that claim.  See Johnson,

263 F.3d at 1242.

Live 360 also cannot recover in quantum meruit for the work done on the

concerts performed at Atlanta Symphony Hall.  Although the agreement does not

cover those services, Live 360 failed to show the value of the benefit conferred by

that work to ASO.  "Proof of the reasonable value of services rendered to and

accepted by a defendant is an element essential to recovery on a quantum meruit

basis."  Diegert v. Cedarbrook Homes, Inc., 599 S.E.2d 211, 212 (Ga. Ct. App.

2004) (quotation marks omitted).  The relevant inquiry is the value of the benefit to

the defendant, not the value of the labor to the plaintiff.  Watson v. Sierra

Contracting Corp., 485 S.E.2d 563, 570 (Ga. Ct. App. 1997); see Diegert, 599

S.E.2d at 212–13 ("[T]he plaintiff cannot recover in quantum meruit if it presents

insufficient evidence of the value of the benefit it conferred on the defendant.").

The only evidence of value in the record is Lucas' deposition statement that

he thought $5,000 per show was "fair" compensation.  That evidence goes to the

value of his labor, not the value of any benefit conferred upon ASO.  Live 360

asserts that it is required to prove value at trial, not at the summary judgment stage.

---

[6] Because Live 360 has not shown a genuine issue exists regarding whether the agreement covers the 2013 bookings, we do not address the district court's conclusion that Live 360 also failed to show the value of the benefit conferred as to those services.

We disagree.  Under Georgia law, the value of the benefit conferred is an essential element of a claim for quantum meruit.  See Diegert, 599 S.E.2d at 212.  Because Live 360 has not provided any evidence regarding that value, summary judgment was appropriate as to that claim.  See Celotex Corp., 477 U.S. at 322–23, 106 S. Ct. at 2552 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and there is "no genuine issue as to any material fact" where a party fails to establish an essential element.).

## B.

Live 360 also contends that the district court erred by granting summary judgment on its common law fraud claims for two reasons.  First, Live 360 argues that ASO committed fraud because Schell promised to renew the agreement but lacked the present intent to do so.[7]  It asserts that the district court wrongly distinguished between an affirmative intent not to perform and the lack of a present intent to perform, when both are actionable as fraud in Georgia.[8]

[7] It is unclear whether Live 360 challenges the district court's conclusion that neither Fox nor Romanstein made promises regarding an extension, and for that reason were individually entitled to summary judgment on Live 360's claim for fraud.  To the extent it does challenge those determinations, we conclude that summary judgment was proper.  A claim for fraud cannot succeed against someone who did not make a misleading or false statement.  See Wilson v. S & L Acquisition Co., L.P., 940 F.2d 1429, 1439 (11th Cir. 1991) (explaining that a plaintiff asserting fraud based on a material misrepresentation "must establish that a promise or misrepresentation was made").  And Live 360 points to no evidence showing that either officer promised to extend the agreement.

[8] We do not agree with ASO that Live 360 waived this argument.  It raised it before the

We need not determine whether the district court incorrectly defined fraud. Even assuming Schell's statements amount to misrepresentations under Georgia law, Live 360 cannot show that they caused it harm. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."). Live 360 claims that it relied on Schell's promises to its detriment because it worked on concerts for the 2013 season believing ASO would extend the agreement. As we already explained, the consulting agreement covered those services. Live 360 cannot say that it was harmed by doing work it was required to do under the contract. See Crowell v. Brim, 12 S.E.2d 585, 587 (Ga. 1940) (explaining that harm occurs when the misrepresentation induces the plaintiff to act in a way "which he would not have done but for the misrepresentation"). Because Live 360 points to no other evidence that it was harmed by the alleged misrepresentations, summary judgment was proper as to that claim. See id. (recognizing that a fraud claim "must be followed by damage"); Wilson, 940 F.2d at 1439 (explaining that under Georgia law, a plaintiff asserting fraud based on a material misrepresentation "must establish . . . that the misrepresentation caused the plaintiff harm").

---

district court and in its briefs to this Court.

11

Second, Live 360 argues that ASO committed fraud when it waited until August 2012 to disclose that it was not extending the agreement.  In Georgia, suppression of a material fact which a party is under an obligation to communicate constitutes fraud.  Ga. Code Ann. § 23–2–53.  We need not decide whether Live 360 and ASO had a confidential relationship giving rise to a duty to disclose.  Even assuming that ASO had a duty to disclose, Live 360 has not shown that ASO or its officers suppressed a material fact.  The evidence shows that Fox made the decision not to extend the agreement in August 2012, and he disclosed that decision in his letter to Live 360 almost immediately after making it.  Live 360 points to no actual evidence showing that ASO knew it was not going to renew the contract before August 2012, and its conclusory statements to the contrary are not sufficient to overcome summary judgment.  See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion.").

Because no genuine issue of material fact exists regarding Live 360's quantum meruit or fraud claims, the district court correctly entered summary judgment in ASO's favor.

**AFFIRMED.**